[Civ. No. 3190.   Third Appellate District.—January 18, 1927.]

J. BRUCE GIBSON, Appellant, v. HERCULES MANUFACTURING & SALES COMPANY, INC., (a Corporation), et al., Respondents.

[1] CONTRACTS—BREACH—ACTION FOR DAMAGES—PLEADING.—In this action to recover damages for alleged breach of a contract whereby plaintiff and one of the defendants were employed as sales agents for a certain patented automobile lock, the memorandum of agreement having been pleaded *in haec verba*, and the complaint having failed to allege demand for locks in the man-

---

1.  Loss of profits as element of damages upon wrongful cancellation of sales agency, note, 32 **A. L. R.** 239.

ner and at the times stated in the agreement, or even affirmatively to show compliance with the conditions precedent to require performance by the defendant manufacturing company, or what had been done by said sales agents in connection with the promotion and publicity of said automobile lock, defendants' special demurrers were properly sustained.

[2] ID.—INTERRUPTION OF NEW ENTERPRISE — ANTICIPATED PROFITS—DAMAGES.—Where a new business or enterprise is floated and damages by way of profits are claimed for its interruption or prevention, they will be denied for the reason that such business is an adventure, as distinguished from an established business, and its profits are speculative and remote, existing only in anticipation.

[3] ID. — PROFITS — LOSSES — CONTINGENT PROBABILITIES. — The past profits of a going concern, if any, may be ascertained when its business is interrupted, but the fact of profits to be realized from a business about to be launched can exist only on paper, and while profits may be possible, losses in the enterprise are just as possible, and in either case they are nothing more than contingent probabilities.

[4] ID.—BREACH—UNCERTAIN PROFITS—DAMAGES.—The loss of profits growing out of a breach of contract, and resulting to an unestablished business, is of too uncertain a character to constitute a basis for the computation of damages for the breach.

(1) 17 **C. J.**, p. 1017, n. 79.   (2) 17 **C. J.**, p. 797, n. 99.   (3) 17 **C. J.**, p. 796, n. 96, p. 797, n. 99.   (4) 17 **C. J.**, p. 797, n. 99.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Humphrey, Grant, Zimdars & Warren for Appellant.

Corbet & Selby and Wm. T. Eckoff for Respondents.

PLUMMER, J.—Plaintiff began this action against the defendant corporation and its stockholders to recover damages in the sum of $100,000, consisting principally of loss of profits alleged to have been suffered by him for and on account of the failure of the defendant corporation to keep

2.   See 8 **Cal. Jur.** 777; 8 **R. C. L.** 511.

and perform on its part the terms and conditions of a certain contract annexed as an exhibit and made a part of plaintiff's complaint. The defendants interposed demurrers, both general and special, setting forth in detail eighty-nine general and special reasons why the plaintiff's complaint is insufficient. Five complaints in all were filed. After the defendants' demurrers were sustained to the plaintiff's fourth amended complaint, plaintiff declined to amend, judgment was entered for the defendants and the plaintiff appeals.

Passing the allegations in the complaint as to the corporate existence of the Hercules Manufacturing & Sales Company, Inc., the names of the stockholders and the respective number of shares owned and held by each in the defendant corporation, the complaint alleges that on or about the eighth day of December, 1920, one of the defendants, Norman Lombard, a large stockholder in the Hercules Manufacturing & Sales Company, made a proposition to the plaintiff that said two persons should unite their efforts, and either as a company composed of themselves, or in their personal capacity, or through the agency of a corporation to be formed, effect an arrangement with the Hercules Manufacturing & Sales Company for the acquisition and sale of a certain automobile lock, known as the Hercules lock, invented by one S. H. Waterman, and then owned by the defendant corporation; that a certain paper was drawn up embodying the terms and arrangements of the proposition, which was in the form of a letter dictated and signed by the said Norman Lombard and addressed to the plaintiff, J. Bruce Gibson. This writing is in the following words and figures, to wit:

"Exhibit 'A.'

"Norman Lombard and Company
"First National Bank Building,
"San Francisco.

"December 8, 1920.

"J. Bruce Gibson, Esq.,
    "San Francisco, Calif.
"Dear Sir:
    "In order to reduce to writing our several conversations covering your connection and association with myself and the Hercules Manufacturing and Sales Company, Inc., I am writing you this letter covering the arrangement under-

stood between us to this date. Kindly indicate your approval of the same in the place indicated below, returning one copy for my files, and oblige.

"I proposed to organize a sales company or to revive an existing corporation and give it a proper and suitable name; this company to handle the sale of the Hercules Lock or locks, under substantially the following conditions:

"The Hercules Company is to give an exclusive contract to the Sales Company to distribute and sell in all parts of the world all of the Hercules locks to be manufactured, including all improvements thereon, and all lock devices which the Hercules Company may control or acquire, so long as the Sales Company shall continue to sell the *bona fide* purchasers not less than 120,000 locks per annum, beginning July 1st, 1922, provided, not less than 60,000 locks to be sold by them prior to July 1st, 1922. It is understood that all locks sold in excess of 120,000 per annum is to be credited to succeeding years.

"For the failure to make such sales in any year the sales contract may be terminated at the option of the Hercules Co.

"The Sales Company shall agree to handle no other locks than those owned or controlled by the Hercules Company, except by mutual consent, during the life of this agreement.

"The Hercules Company is to pay all rewards offered for arrest and conviction of persons stealing cars locked with Hercules locks and to protect the Sales Company against all claims for damages on account of infringement of patents.

"The Hercules Company is to sell and deliver to the Sales Company all locks ordered at times stated and in quantity ordered, reasonable notice being given by the Sales Company of requirements; subject to delays and contingencies beyond the control of the Hercules Company.

"The Hercules Company is to furnish necessary financial assistance to enable the Sales Company to properly introduce the Hercules Lock; the extent of such financial assistance to be mutually agreed upon.

"The Sales Company shall pay interest to the Hercules Company upon all moneys advanced for its account at a rate to be agreed upon, not to exceed 2% more than the maximum rate of re-discount announced by the Federal

Reserve Bank of San Francisco from time to time.   Interest payable monthly or to be compounded.

"Each company shall be conducted independently and shall pay all of its own expenses, subject however to any future arrangements which may be made between them for services rendered by one to the other, or for work jointly undertaken.

"The Sales Company agrees to purchase annually from the Hercules Company, the number of locks hereinbefore specified at the following prices:

"Number 1 size at $3.75 each.

"Number 2 size at $4.25 each.

"Number 3 size at $4.75 each.

"Said prices being based upon estimated cost of manufacture for the

"Number 1 size of $3.03 each.

"Number 2 size of $3.24½ each.

"Number 3 size of $3.62½ each.

"All locks to be first-class quality and workmanship.

"It is agreed and understood that if any saving in the first cost of manufacture shall be effected that one-half of the said saving shall accrue to the benefit of the Sales Company and one-half retained by the Hercules Company, and, on the other hand, if the first cost of manufacture shall prove greater than that estimated, one-half of such difference shall be borne by the Sales Company to the Hercules Company and the other half by the Hercules Company.

"No charge shall be made except first cost of manufacture for locks given away by the Sales Company for advertising purposes.

"It is agreed that you will devote substantially all of your time and energy to the business, engaging in no other going occupation and that you will receive as compensation, first a salary of $300 per month, and usual and necessary traveling and other expenses incurred while engaged in the business of either or both corporations, same to be paid by the Hercules Company until such time as your activities shall be more largely given over to the selling of the product, after which the salary shall be pro-rated between the two companies.

"In addition to such salary, and in consideration of your acceptance of such nominal salary for your services, I agree

that you shall participate in the net profits of the Sales Company to the extent of 25%, as represented by 25% of the capital stock of the said company, which said stock I agree to place in escrow, to be turned over to you at such time prior to July 1st, 1922, as you have caused the Sales Company to earn in net profits the sum of $12,000.00 as shown by the books of the Company. Should the profits fail to equal this amount by July 1st, 1922, then and in that case the majority holder or holders of the stock shall have the right to declare the 25% equity in the stock issue forfeited but all earnings to that date shall thereupon be paid to you to the extent of 25%, less any amounts standing charged to your account; and in such case the agreement for compensation shall thereupon terminate *ipso facto* and the stock shall return to the treasury of the Sales Company.

"It is agreed that you shall be Vice President and General Manager of the Sales Company, with authority to conduct its general business subject to the control and direction of the Board of Directors.

"When the Sales Company shall be organized, it is agreed and understood that a new contract or contracts shall be entered into by and between the interested parties, embracing the terms hereof and including such additional provisions as shall be found necessary or desirable, in order to carry out the terms of this agreement and at the same time to arrange the details to the satisfaction of all concerned. Thereafter I shall be relieved of personal responsibility hereunder for those agreements herein which are to be performed by the Sales Company.

"Prices above are to be f. o. b. cars point of production, also provided the sales price shall not be less than 25% more than the cost of manufacture. Following is an estimate of expenditures for the Sales Company up to and including May, 1921, showing income as of that date equaling expenditures."

This letter was signed, as stated, by the said Norman Lombard and accepted by the plaintiff and, also, one H. S. Waterman, a stockholder in the defendant corporation.

The complaint further alleges that this contract, or agreement, or memorandum of agreement was at a subsequent date, not given, ratified, and approved by the directors

of the defendant corporation, that in pursuance of the terms of said memorandum, the plaintiff and the said Lombard, in their individual capacities, left San Francisco and went to certain eastern cities and negotiated and arranged for the manufacture of said locks upon prices and terms very much better than said defendant Hercules Manufacturing & Sales Company had tentatively arranged therefor, effecting a savings of many thousands of dollars in the cost of the manufacturing of said locks. The complaint further alleges that the defendant corporation advanced and paid to the plaintiff all expenses and outlays attendant and necessarily incurred on said eastern trip, and also paid the plaintiff the sum of $300 per month on account of salary from the month of December, 1920, down to and including the month of August, 1921, and that the plaintiff gave all his time and attention exclusively to the performance of his duties under said contract from the eighth day of December, 1920, down to the month of August, 1921, and that plaintiff, in all respects, performed all the terms and conditions of the said contract on his part to be performed, and was willing, able, and ready to perform all the terms and conditions of said contract on his part to be performed; that on or about the month of December, 1920, it was agreed by and between the plaintiff and the Hercules Company that the obligations to be performed by plaintiff, under the terms of said agreement, could be carried out and performed as well in the interest of both the plaintiff and Hercules Company by and through a sales company, composed of the plaintiff and the said Lombard, as individuals, as by a corporation organized for that purpose, and that the said Lombard and the said plaintiff should constitute the sales company; that on or about the eighth day of March, 1921, the Hercules Company, by its board of directors, agreed to said contract, as so modified; that the said plaintiff and said Lombard might comply with the obligations on their part to be performed, etc., as a sales agency. The said complaint then sets forth the following:

"V.

"That the said defendant Hercules Company was unable to, and did not, provide money or credit or means to enable it to manufacture or have manufactured the said locks, or any kind of locks, and no locks were manufactured, and the said

Hercules Company failed to have manufactured or delivered to this plaintiff and to the said Lombard as such sales company, or to either of them, any locks whatever as provided in said contract or otherwise, or at all, and no locks were manufactured by the said Hercules Company as provided in the said contract or otherwise, or at all, or were delivered by it to this plaintiff and to said Lombard, or to either of them, and the failure of the said Hercules Company to comply with the said contract and deliver locks as aforesaid was caused by and is attributed to no other cause than the inability of the said Hercules Company to manufacture or have manufactured the said locks as contemplated by them under the terms of the said contract. And in this connection, plaintiff alleges that many times after the said 8th day of March, 1921, he demanded of the said Hercules Company, on behalf of himself and the said Lombard, that the said Hercules Company provide and deliver said locks as aforesaid, and the said Hercules Company has many times promised so to do, but failed to keep its promise in this regard, and no locks of any kind whatever were ever supplied, as provided by the said contracts, or otherwise or at all.''

### "VII.

"That by reason of the failure of the said Hercules Company to supply or furnish or deliver to this plaintiff and the said Lombard, or either of them, as such Sales Company, or otherwise, any locks whatever in accordance with the terms of the said contract on its part to be performed as aforesaid, the said plaintiff and the said Lombard have been damaged in the sums of money as hereinafter stated; and this plaintiff because of being entitled to 25% of the profits accruing jointly to this plaintiff and the said Lombard as hereinbefore set forth, and arising or growing out of the said contract has been damaged to the extent of 25% of the said sum; and in this connection plaintiff alleges that the damages so sustained by him as aforesaid, and arising and growing out of the failure of the defendant Hercules Company to comply with the terms of the said agreement on its part to be performed are as follows:

"First: That under the terms of the said contract this plaintiff and the said Lombard agreed to purchase, and the said defendant corporation agreed to sell not less than

120,000 locks per annum, beginning July 1st, 1922, at the prices set forth in said contract, to wit:

| | |
|---|---|
| "No. 1 size | $3.75 each; |
| "No. 2 size | 4.25 each; |
| "No. 3 size | 4.75 each; |

and the said prices were based upon an estimated cost of manufacture of $3.03 for No. 1 size; $3.24½ for No. 2 size; and $3.62½ for No. 3 size.

"Said contract contained the provisions that if any saving in the first cost of manufacture should be effected that one-half of said saving should accrue to the benefit of the said plaintiff and the said Lombard, and to that extent reduce the price to be paid by the said plaintiff and the said Lombard for the said locks as hereinbefore set forth; and that the other one-half should be retained by the Hercules Company; and on the other hand that if the first cost of manufacture should prove greater than the estimated cost set out in the said contract one-half of the increased cost, over and above the estimate, should be borne by Sales Company composed of the plaintiff and the said Lombard, and the other one-half by the Hercules Company;

"That this plaintiff, acting for himself and the said Lombard composing the said Sales Company, was able to and did secure a contract by responsible parties providing for the manufacture of said locks, and of the kind, quality and workmanship required by said contract, at a figure or cost for the 120,000 locks of the sum of $66,150.00, and for 360,000 of said locks, at a proportionate reduction, or the sum of $198,450.00, less than the estimated cost of the manufacture of said locks as set forth in the said contract;

"That it was agreed by and between the parties to said contract that the same should continue in force and effect for a reasonable time, and it was agreed that the said contract should continue in force and effect for not less than three years, and during each of said three years the said plaintiff and the said Lombard should buy, and the said defendant Hercules Company should sell not less than 120,000 locks per annum as hereinbefore stated; that assuming the said contract did not continue in force or effect for a period longer than three years, a saving in the cost of manufacture, over the estimated cost would be three times the said $66,150.00, or the sum of $198,450.00;

"That the saving and lessened cost of manufacture of said 360,000 locks above the estimated cost as hereinbefore set forth, so effected and brought about by this plaintiff, as hereinbefore set forth amounted to the said sum of $198,-450.00, and of which saving or lessened costs the said Sales Company, composed of this plaintiff and the said Lombard, would be entitled to 50%, or the sum of $99,-225.00; and this plaintiff is entitled to 25% of the 50%, or the sum of $24,806.25.

"Second: That the other element constituting the damage sustained by the plaintiff in the loss of profits that would have followed from the sales of said locks had the said Hercules Company performed its contract to supply and furnish said locks, is as follows:

"That this plaintiff, acting on behalf of himself and the said Lombard, as the Sales Company gave great publicity to the said lock, and to the merits thereof, and by the aid of agents and persons specially qualified for such purposes, canvassed and solicited orders for the purchase of said locks, and learned that the plaintiff and said Lombard, as such Sales Company, could sell and dispose of more than the minimum quantity of locks so contracted to be purchased by them and supplied by the said Hercules Company and for a period of not less than three years; and this plaintiff alleges on information and belief that if the said Hercules Company had kept its contract to supply said locks as hereinbefore stated, that this plaintiff on behalf of himself and the said Lombard, as such Sales Company, could and would have sold not less than 120,000 locks per annum for three years from and after the date of said contract, and at a price or figure which, after deducting the price to be paid to the Hercules Company for the said locks, and expenses of every kind pertaining to the matter of the sales, overhead, and otherwise, would have left remaining to this plaintiff and the said Lombard, as such Sales Company, a profit of 90½¢ per lock, over and above the price to be paid for said lock at the figures expressed in the contract. That is to say—without taking into consideration the deduction to be made by reason of the saving in the cost of manufacture as hereinbefore expressed, this plaintiff and the said Lombard could have sold 120,000 locks per annum for not less than a period of

three years at a price that would net above all expenses entailed upon the selling and the payment of the purchase price the sum of 90½¢ per lock, or a profit of $108,600.00 per annum, of which sum this plaintiff would be entitled to 25%, or $27,130.00; and for a period of three years the profit to the said plaintiff and the said Lombard would be the sum of $325.800.00, and plaintiff's share or 25%, would be the sum of $81,450.00.

"Plaintiff alleges that in the publicity given by him to the said lock and to the merits thereof, and in the work done by himself and by the agents and persons employed to canvass and solicit orders for the purchase of said locks, as aforesaid, he, the plaintiff, acting on behalf of himself and the said Lombard, expended a great deal of time and also expended, in the employment of the said agents and persons who canvassed and solicited orders, as aforesaid, large sums of money, and the reasonable value of which time, together with the money so expended by him exceeded the sum of Two Thousand Five Hundred Dollars ($2,500.00), and no part of which has been repaid.

"Plaintiff alleges that he and the said Lombard have been damaged as hereinbefore stated in the said sums of money, representing, as before stated, the profit that would have been made by them over and above the payment of all expenses of every kind in connection with the sales of said locks and over and above the sums of money required to be paid by the Sales Company, composed of the said plaintiff and the said Lombard, to the said Hercules Company, as provided in the said agreement for the said locks, and without any deduction or credits to the said plaintiff and said Lombard as such Sales Company on account of the saving and lessened cost of the manufacture of the said locks so brought about and effected by plaintiff as hereinbefore set out in this complaint."

The complaint states the reasons why Lombard is made a defendant instead of joining herewith as a plaintiff and then asks for the recovery of $100,000 damages, alleged to have been suffered in the manner herein set forth. As stated, the defendants interposed demurrers, specifying eighty-nine grounds wherein the complaint is insufficient, three or four of which only are necessary to be considered in the disposition of this cause, to wit: That the complaint is

insufficient to state a cause of action; that the alleged damages consist of uncertain, contingent, and speculative profits so remote and indefinite of ascertainment as not to furnish a cause of action; that it cannot be ascertained from the complaint what publicity of the merits of said lock was given by the said plaintiff, what persons were employed by him as agents, how much time he expended, what his services were worth, or how much money, if any, he expended that had not been repaid by the said corporation. We have not followed the wording of the demurrer, but we have stated the substance in concrete form in order that time may be saved and the length of this opinion curtailed.

[1] Paragraph five of plaintiff's complaint alleges the failure on the part of defendant corporation to have manufactured and delivered to the plaintiff, or the said Lombard, any of the locks referred to in the memorandum of agreement and attempts to charge the defendant corporation with responsibility in the following language: "And in this connection, plaintiff alleges that many times after the said 8th day of March, 1921, he demanded of the Hercules Company, on behalf of himself and the said Lombard, that the said Hercules Company provide and deliver said locks as aforesaid."

Turning to the memorandum of agreement, we find the following paragraph relative to the selling and delivery by the defendant corporation of Hercules locks to the plaintiff, to wit: "The Hercules Company is to sell and deliver to the Sales Company all locks ordered at times stated and in quantity ordered, reasonable notice being given by the Sales Company of requirements; subject to delays and contingencies beyond the control of the Hercules Company." Nowhere in the complaint is there any allegation of the time when the plaintiff ordered said locks to be delivered, nowhere in the complaint is there any statement of the quantity ordered, nor is there anything in the complaint indicating that a reasonable notice, or any notice, being given by the Sales Company of its requirement of locks to be delivered to it by the defendant corporation. So far as the complaint is concerned, it may be that the demands made by the plaintiff for the delivery of the locks were made long after the contract had been abandoned by all the parties thereto. The complaint itself, as we have said,

indicates that the plaintiff ceased giving his attention thereto at about the beginning of August, 1921. Again, the memorandum of agreement contains a provision that not less than 60,000 locks shall be sold prior to July 1, 1922, before the defendant becomes obligated to deliver 120,000 locks per annum. There is no allegation in the complaint that the plaintiff ever sold said 60,000 locks, or ever demanded of or sought to obtain from the defendant said 60,000 locks or any of them. The agreement calls for three sizes of locks. There is nothing in the complaint that locks of any particular size were ever ordered or called for by the plaintiff from the defendant corporation. Again, the memorandum of agreement relating to the plaintiff's right to have and receive 25 per cent of the capital stock, etc., as a part of his profits is made dependent upon the Sales Company showing a profit of $12,000 prior to July 1, 1922. There is not a line in the complaint indicating that one dollar of profit was ever made or furnished by anybody in connection either with the manufacturing or selling of said locks.

As shown by the excerpt which we have quoted from the complaint, there is nothing set out indicating what publicity the plaintiff has given to the lock in question, no statement of what agents were employed, or what work they have done, what compensation they have earned, if any, or the value of their labor. No statement of the time expended by the plaintiff other than the allegation of its being a "great deal," no statement of the time expended by the agents or persons canvassing as solicitors, or of how much money has been paid therefor, if any, or how much is owing therefor, if any, no statement of how much money the plaintiff has expended, but only the blanket statement that all these matters exceed in value the sum of $2,500.

Turning to the agreement, we find the following clause relating to the matters just treated: "The Hercules Company is to furnish necessary financial assistance to enable the Sales Company to properly introduce the Hercules lock, the extent of such financial assistance to be mutually agreed upon." There is not a word in the complaint showing what financial assistance was agreed upon, or whether the defendant ever assumed to pay any sum whatever for and on account of the alleged expenditures, work, etc., alleged to exceed in value the sum of $2,500. This analysis, we think,

clearly establishes that the complaint was subject to the special demurrers interposed by the defendants.

[2] There is, however, another matter which goes to the very vitals of this action and precludes the possibility of plaintiff's recovery, which is best stated in section 118, 17 C. J., page 797: "Where a new business or enterprise is floated and damages by way of profit are claimed for its interruption or prevention, they will be denied for the reason that such business is an adventure, as distinguished from an established business, and its profits are speculative and remote, existing only in anticipation." The paragraphs of the complaint which we have copied show that no business has ever been transacted, that no locks have ever been manufactured and no locks have ever been sold. The alleged loss of profits relates not to the interruption of the business of a going concern, but is remote, contingent, speculative, existing only in anticipation, without any tangible basis upon which to predicate any loss whatever. The allegation that the plaintiff could have done this and could have done that, if the defendant had done something else, furnishes no facts upon which to predicate a judgment. [3] The past profits of a going concern, if any, may be ascertained when its business is interrupted, but the fact of profits to be realized from a business about to be launched can exist only on paper and while profits may be possible, losses in the enterprise are just as possible, and in either case, they are nothing more than contingent probabilities. [4] In *California Press Mfg. Co.* v. *Stafford Pack. Co.,* 192 Cal. 479 [32 A. L. R. 114, 221 Pac. 345], the supreme court of this state says: "As a proposition of law it is well established that loss of profits growing out of a breach of contract, and resulting to an unestablished business, is of too uncertain a character to constitute a basis for the computation of damages for the breach. (*Kettering* v. *Sheppard,* 19 N. M. 330 [142 Pac. 1128].) Where a new business or enterprise is engaged in, and damages by way of profits are sought for its interruption or prevention, the rule is that they will be denied, for the reason that such business is an adventure as distinguished from an established business, and its profits are speculative and remote, existing only in anticipation. (17 Cor. Jur., p. 797, sec. 118; *Shoemaker* v. *Acker,* 116 Cal. 239, 244 [48 Pac. 62].) The rule is one of necessity. Damages must be certain of ascertainment. If

one engages in a new industry, there are no probable data of past business from which the fact can be legally deduced that anticipated profits would have been realized. (*Central Coal Co.* v. *Hartman,* 111 Fed. 96, 99 [49 C. C. A. 244].)" In *Central Coal Co.* v. *Hartman, supra,* we find the following: "He who is prevented from embarking in a new business can recover no profits, because there are no provable data of past business from which the fact that anticipated profits would have been realized can be legally deduced," citing a number of authorities.

In 8 Cal. Jur., page 777, the distinction is clearly drawn by the text-writer as to when loss of profits may be allowed. If the business is established and is interrupted, past profits furnish the basis for calculating the damage. If the business is unestablished, such anticipated profits are held to be remote, uncertain, and speculative, on the ground that no satisfactory statement of the loss can be made. To state it in different language: No one can say that any profits would ever have been realized. The rules which we are here stating relative to loss of future profits are also clearly set forth in *Shoemaker* v. *Acker,* 116 Cal., at pp. 244, 245 [48 Pac. 62]. The substance of the holding there is that when the business prevented or interrupted is an established one, a basis for allowing damages is found in the past profits of the concern, but if no business has ever been done, no profits earned, the possibility of proving profits does not exist, and no court can determine whether there would be profits, or whether the prospective business would not rather result in losses. To the same effect is the case of *McConnell* v. *Water Co.,* 149 Cal. 65, 66 [8 L. R. A. (N. S.) 1171, 85 Pac. 929]. Since the briefs were written in this case, the leading case, *California Press Mfg. Co.* v. *Stafford Pack. Co.,* above referred to, reported in 192 Cal. 479 [221 Pac. 345], has been re-reported in 32 A. L. R. 114, to which has been appended annotations covering thirty-six pages. On page 126 of the same volume, under the subtitle setting forth the rule of law that no recovery can be had for losses of profits, which are uncertain, speculative, contingent, and conjectural, is collated authorities from nearly every state in the Union, showing an unbroken line of decisions confirming the principle set forth in the case of *California Press Mfg. Co.* v. *Stafford Pac. Co., supra,* and on page 153 of the same volume, under the sub-

title dealing with the rule relating to anticipated profits of an unestablished business, is also collected a long list of decisions showing the unanimity of courts in upholding such doctrine. The cases collected and appended in the notes to the principal case, reported in 32 A. L. R. 120, are so extensive and so numerous that it is unnecessary to do more than cite the volume and page of said work to show that plaintiff has no cause of action on account of his alleged loss of anticipated profits, based upon unrealized hopes of an unestablished business. Whatever damage he may have suffered, by reason of the acts of the defendants, must be based upon something tangible and not upon future prospects, and there being nothing of that character in the complaint, and nothing in the complaint other than what we have referred to, it follows that the judgment of the trial court should be affirmed, and it is so ordered.

Buck, J., *pro tem.*, and Finch, P. J., concurred.