[Civ. No. 6813. Second Appellate District, Division One.—September 2, 1931.]

BENNIE GROSS, Respondent, v. WRIGHT AND CALLENDER BUILDING COMPANY (a Corporation), Appellant.

Barker & Keithly for Appellant.

Arthur C. Verge for Respondent.

HOUSER, J.—Plaintiff was the owner and operator of a clothes cleaning and pressing business which he conducted in a storeroom which was a part of a certain building to and for the use of which the defendant furnished steam for heating and other purposes. By means of a tunnel the steam was conveyed in an eight-inch pipe to a point beneath a basement of the building of which plaintiff's storeroom was a part and which basement was directly underneath the storeroom occupied by plaintiff. From the eight-inch pipe in the tunnel the steam was carried by a two-inch pipe to a boiler in the basement and from which boiler the steam was distributed by the owner of the building, not only to plaintiff for his use in the clothes cleaning and pressing business, but as well to other tenants on the premises. A return pipe about one and one-half inches in diameter from the boiler conducted the "dead steam" back through the tunnel to the premises of the defendant.

It appears that a break occurred in a part of the return pipe which was located in the basement, which had the effect of allowing large quantities of steam to escape into the basement, and which break, after notice thereof to the defendant, not having been repaired by it for a continuous period of several months following its occurrence, had the result that, as alleged in plaintiff's complaint, great damage was done not only to the interior of the storeroom occupied by him, but as well resulted in a very considerable loss of patronage to his business. Judgment was rendered in favor of plaintiff, from which the defendant appeals.

On behalf of the defendant it is contended that the steam was delivered by it in the main eight-inch pipe only to the tunnel beneath the basement of the building of which the storeroom was a part; that neither the boiler, the two-inch pipe, nor the return pipe from the boiler to the tunnel was owned by the defendant; and consequently that it was not liable for any damage which resulted to plaintiff by reason of the steam which escaped from the broken return pipe. However, on the trial of the action some evidence

was introduced from which the conclusion might have been reached by the jury that the defendant both installed and paid for all such pipes.

But assuming that because all such smaller pipes were so attached to the land they constituted fixtures (sec. 660, Civ. Code), and consequently were the property of the owner of the land upon which rested the building to which the steam was furnished, it is urged by plaintiff that, notwithstanding such assumed situation, upon notice being given to the defendant that the return pipe had broken, it became its duty to shut off the steam so as to prevent injury from resulting to plaintiff.

In 28 Corpus Juris, at page 594, the rule as to the liability of a corporation furnishing gas to consumers thereof for damages resulting from failure of the gas company, after notice, to remedy a leak in the gas service pipe, is stated as follows:

" . . . When the gas company has received actual notice of a leak in a main, or in a service pipe, the company must use reasonable care to discover the cause of the leak and appropriate means to remedy it, and, if necessary, must give sufficient notice of the impending danger. It is immaterial in such case that the pipe where the leak occurred was owned by the consumer." (Citing cases.)

In the syllabus of the case of *Memphis Consol. Gas & Elec. Co.* v. *Creighton,* 183 Fed. 552, the following statement of the law occurs:

"A gas company, which through its pipes supplies gas to a house and has control of the apparatus for cutting it off, when notified that gas is escaping in the house and informed of injury and danger to the inmates therefrom, owes a duty to the occupants of the house to exercise reasonable diligence in shutting off the gas therefrom, and it is immaterial that the pipes where the leak occurred were owned by the owner of the house."

And it is likewise immaterial in what manner the gas company may receive information regarding the fact that gas is escaping from its pipes and by reason thereof is causing, or is likely to cause, injury or damage. (28 C. J. 594, and authorities there cited; *Luengene* v. *Consumers' L. H. & P. Co.,* 86 Kan. 866 [122 Pac. 1032].)

It would seem clear that the doctrine announced in the foregoing authorities respecting the liability of an owner and distributor of gas should apply with equal force in an analogous case wherein the liability of an owner and distributor of steam is concerned.

However, the defendant contends that by the terms of the complaint in the action plaintiff limited himself to a recovery of. a judgment against the defendant on a claim that the damages suffered by plaintiff were caused by reason of the failure of the defendant to repair the broken return pipe. With reference to such pleading, it is noted that the allegation therein was as follows:

"That plaintiff immediately notified the defendants and each of them regarding the said leak and break in said pipe and further notified them and each of them to remedy and repair the said leak, but that the said defendants and each of them failed, refused and neglected to repair the said leak for a long period of time, to-wit, about six months, and that as a consequence of their neglect to repair the leak, the plaintiff has been and now is damaged in the sum of $25,000.00."

On examination of such allegation it becomes apparent that the notice to the defendant was to the effect that a "leak and break in said pipe" had occurred; "and further notified them (defendants) and each of them to remedy and repair the said leak".

As in substance has hereinbefore been indicated, the manner in which the defendant received notice of the fact that steam furnished by it was escaping in large quantities into the storeroom of plaintiff was immaterial; and manifestly it was not merely the fact itself that a leak had occurred in a steam pipe that was of such moment, not only to plaintiff but to the defendant as well, but it was the injury or damage that would or might result to plaintiff by reason of such leak that was of importance to each of them. It is evident that if loss or damage to plaintiff was to be avoided, action of some sort, either in the way of repairing the leak in the steam pipe, or by closing the valve which controlled the entrance of the steam into the pipe which was broken, was an undeniable necessity, and the conveyance of information to the defendant that a "leak and break in said pipe" had occurred and requesting the

defendant "to remedy and repair the said leak", constituted not only a notice of the conditions then existing, but, in accordance with the principle of law announced in the authorities to which reference herein has been had, placed the duty on the defendant to take such reasonable precautions in the premises as would prevent the steam furnished by it from causing loss or injury to plaintiff. Presumably the defendant was in possession and control of its own plant used for the production and distribution of the steam which was furnished by it to the building in which the storeroom and business of plaintiff was located, and its knowledge of the proper steps which should be taken in the existing circumstances to reasonably protect plaintiff from loss was certainly as great, if not greater, than that of plaintiff; and a direction or request by the latter to the defendant that it adopt any particular means of preventing loss to plaintiff undoubtedly would have been regarded by the defendant as unnecessary, if not presumptuous and wholly gratuitous. Although the allegation in the complaint regarding the situation was not as specific as might have been desirable, nevertheless it was sufficient to place the defendant on notice as to the particular act of the defendant which plaintiff asserted constituted negligence, and which situation, if not remedied, was likely to cause loss or damage to plaintiff. ■ Moreover, the record herein fails to disclose that on the trial of the action any objection was made by the defendant either regarding the insufficiency of the pleading, or to the evidence introduced by plaintiff respecting the omission by the defendant either to "shut off the steam", or to take any other action to protect the property of plaintiff from injury. The issue as to the general negligence of the defendant in the premises was fully recognized by both parties to the litigation, and evidence was freely presented regarding such situation. In such circumstances, the claim by the defendant that in effect the allegation of the complaint was too narrow to admit of the recovery of a judgment cannot be sustained.

■ As a separate defense to the action, in effect the defendant pleaded the contributory negligence of plaintiff. It appears that in operating his business the exhaust steam from two clothes-pressing machines was discharged into the same basement into which escaped the steam from the

broken return pipe of the defendant. On the trial of the action evidence was introduced by each of the parties relative to such issue, and the defendant urged the point that plaintiff was not entitled to recover damages if the exhaust steam from the clothes-pressing machines operated by plaintiff contributed in any degree to the injury or loss sustained by him. In substance, at the request of the defendant, the trial court instructed the jury in accordance with such contention of the defendant. It is manifest that by its verdict the jury impliedly found as a fact that no portion of the injury or loss of which plaintiff complained was attributable, even in part, to his own acts or conduct; and in the circumstances herein outlined this court is powerless to disturb such implied finding of fact.

██ Appellant also complains that the trial court committed prejudicial error in giving to the jury for its consideration certain specified instructions.

Rule VIII of this court in part provides that: " . . . where instructions given to a jury are attacked as erroneous, all other instructions given, bearing upon that subject, must be printed in full in appellant's brief".

Since it appears that appellant's brief fails to contain "all other instructions given" which have a bearing upon the point presented by appellant, it follows that the error suggested by appellant cannot be considered by this court.

██ The complaint in the action contained no specification of the several items of damage alleged to have been suffered by plaintiff. On demand of the defendant, a bill of particulars was furnished by plaintiff to the defendant, which contained an itemization of his various claims of damage, among which were cost of repairs, etc., to the interior of the storeroom occupied by plaintiff, amounting to the sum of $2,044; extra labor in conducting the business of plaintiff, $840, and for loss of business, goodwill and patronage, $20,916. The verdict of the jury in favor of plaintiff was for the sum of $3,500. Appellant here complains that the evidence adduced on the trial of the action was insufficient to sustain a verdict in such amount, and the attention of this court is directed, first, to the evidence which related to the damage to the interior of the storeroom, as to which appellant contends that no witness fixed the amount at a greater gross sum than $1930.50. On the part of respondent, no

claim is made to the contrary. As to the item of $840 for extra labor in re-pressing clothes, plaintiff testified:

"To tell you the truth, I haven't got any expenses down here at all. I can't find any. My books of account show no entries of payments for extra help employed in re-pressing clothes, and I am not able from any record that I have to make any statement as to what I paid for extra help employed to re-press clothes during the six months June, 1925, to December, 1925."

With reference to the combined items which relate to the loss of business, goodwill and patronage, plaintiff produced figures which showed the volume of business transacted by him not only throughout the six months during which the escaped steam was causing the damage to plaintiff's business, but also for a like period both preceding the time when the steam started to enter the storeroom of plaintiff, as well as succeeding the date after the leaky steam pipe had been repaired. In addition thereto, it was shown that the normal and customary increase in volume in the clothes cleaning and pressing business in general, during the particular months in which the damage was suffered by plaintiff amounted to approximately forty per cent more than it did during a like period in the remaining months of the year. However, plaintiff testified that he had no records by which it might appear how many suits of clothes or dresses had been pressed or cleaned by his establishment during any particular period of time; and that:

"I lost between 50 and 100 customers and that is how I arrived at the first item of $12,000 in the bill of particulars furnished by me in this action."

From the foregoing, it will be noted that in the evidence the vital element of "profit", if any, in such business was entirely lacking. In no part of the evidence introduced in behalf of plaintiff may be found a statement by any person to the effect that the business as conducted by plaintiff ever produced any profit. As far as the evidence discloses, it is not impossible that the business of plaintiff may have been conducted at a loss.

In the case of *Gibson* v. *Hercules Mfg. etc. Co.*, 80 Cal. App. 689, 703 [252 Pac. 780, 785], it is said:

"In 8 Cal. Jur., page 777, the distinction is clearly drawn by the text-writer as to when loss of profits may be allowed.

If the business is established and is interrupted, past profits furnish the basis for calculating the damage. If the business is unestablished, such anticipated profits are held to be remote, uncertain, and speculative, on the ground that no satisfactory statement of the loss can be made. To state it in different language: No one can say that any profits would ever have been realized. The rules which we are here stating relative to loss of future profits are also clearly set forth in *Shoemaker* v. *Acker*, 116 Cal., at pages 244, 245 [48 Pac. 62]. The substance of the holding there is that when the business prevented or interrupted is an established one, a basis for allowing damages is found in the past profits of the concern, but if no business has ever been done, no profits earned, the possibility of proving profits does not exist, and no court can determine whether there would be profits, or whether the prospective business would not rather result in losses.'' (Citing cases.)

And in the case of *Bird* v. *United States*, 24 Fed. (2d) 933, 936, the following statement appears:

''Moreover, it is elementary that, to recover for the loss of future or anticipated profits, the burden is upon the plaintiff, not only to show the probable gross income, but the probable cost to him of producing it. The difference between the two is the measure of his loss. . . . ''

It follows that neither as to the item of extra labor nor the item which related to the loss of business, etc., is plaintiff entitled to recover any damages from the defendant.

Accordingly, it is ordered that the judgment of the lower court be modified so as to show a total damage to plaintiff in the sum of $1930.50; and as thus modified, the judgment is affirmed: appellant to recover its costs on appeal.

Conrey, P. J., and York, J., concurred.

'A petition for a rehearing of this cause was denied by the District Court of Appeal on October 1, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 29, 1931.