### CISCO & N. E. R. CO. v. RICKS.
#### No. 735.

Court of Civil Appeals of Texas. Eastland.
Oct. 31, 1930.

Rehearing Denied Jan. 9, 1931.

Shropshire & Bankhead, of Weatherford, for appellant.

Butts & Wright, of Cisco, for appellee.

LESLIE, J.

In this suit the plaintiff, Ricks, recovered a judgment for $1,489.85 against the Cisco & Northeastern Railroad Company, alleging the same to be damages proximately occasioned him by reason of the defendant's failure to issue to him about January 30, 1927, as per an agreement, shares of stock in the company aggregating in par value $4,212.50. The contention is he could then have sold it for that amount but that the defendant, without justification, delayed issuing the same until about July 16, 1928, at which time he accepted the same, but was unable to sell it for any greater sum than 75 per cent. of its par value, resulting in a loss to him of $1,062.50, with interest thereon from July 16, 1928, together with the further loss of 6 per cent. interest on $4,212.50, from January 30, 1927, until July 16, 1928, when he received the stock; his theory being that, had the stock been issued to him as per the agreement, on January 30th, he would then have sold the same for par. The defendant appealed from the judgment indicated.

Some of the material facts alleged and giving rise to the litigation and essential to an understanding of this opinion will be substantially stated, although the controlling questions here decided admittedly arise in matters of pleading.

The Cisco & Northeastern Railroad Company, a corporation, had an authorized capital stock of 5,000 shares of $100 par value each, and 4,041 shares thereof were outstanding. On September 13, 1926, R. Q. Lee, "owner and in possession of a controlling interest of the capital stock" (2,591½ shares) entered into a contract with the T. & P. Railway Company, whereby the company was given an option to purchase, with the sanction of the Interstate Commerce Commission, a controlling interest in the said Cisco & Northeastern Railroad Company, paying par therefor. A provision in the contract provided that the T. & P. Railway Company would acquire 482½ additional shares of stock at par if it was offered for sale by the said Lee within thirty days after the Commerce Commission approved the purchase. This amount of additional shares was already in the hands of Lee, as is disclosed by the option contract. The contract was submitted to the Interstate Commerce Commission November 18, 1926, and by it approved December 21, 1926, and the deal was immediately consummated thereafter.

The plaintiff, Ricks, being treasurer of the Cisco & Northeastern Railroad Company, was familiar with the financial condition of the company and acquainted with the contemplated sale of 51 per cent of the stock to the T. & P. As stated by him, it "was the topic of general conversation between" him and Mr. Lee during the negotiations. He further states that he was not only familiar with the financial condition of the company and the impending sale of 51 per cent. of the stock, but as treasurer he "had a number of times attempted to collect for all of the stock and couldn't do so"; that, under the circumstances, he obtained permission from the president of the defendant to go out and purchase the stock of those shareholders, among them being J. T. Anderson and twenty-three others, all of whom had paid in cash on their stock subscriptions an aggregate sum of $4,212.50. This he acquired for about 25 per cent. of the amount which had been expended in cash therefor, took transfers of the contracts and presented them to the defendant or its president on or about December 30, 1927, and demanded the issuance of paid-up stock to that amount and alleged to be in accordance with the agreement with the defendant, hereinafter to be noticed. This record is silent as to any disposition ever made of that portion of the shares of stock upon which $4,212.50 was, but a partial payment, and it would be mere speculation to undertake to account for its ultimate disposition.

We now pass to the basis of the plaintiff's right of recovery as disclosed by his pleadings. In laying the predicate for the liability to him of the Cisco & Northeastern Railroad Company, he alleges: "Heretofore, prior to January 10th, 1927, J. T. Anderson, et al., had contracted for the purchase of capital stock of the Cisco & Northeastern Railroad Company and had paid to the Cisco & Northeastern Railroad Company a part of the purchase price for the stock contracted to be purchased by them, but said stock had not been issued, due to the fact that the entire amount of stock subscribed for had not been fully paid, and prior to January 10th, 1927, the Cisco & Northeastern Railroad Company, acting by and through its proper officials,

agreed that it would issue to the purchasers hereinafter named or to their order, so much of the capital stock of the Cisco & Northeastern Railroad Company as had been actually paid for by them, and relying on said agreement plaintiff acquired from the various purchasers as hereinafter named, or from their legal representatives, all of their right in and to the stock which they had contracted to purchase, and did acquire from the parties, (24 in all) various amounts aggregating $4,212.50, which these parties had paid in cash on their respective contracts."

In acquiring the interests of the respective parties in said subscriptions, the plaintiff, under the arrangement alleged, obviously contemplated obtaining from the company stock of the par value of $4,212.50. This he further alleges he could have sold for par had it been issued to him about January 30, 1927. The issuance of the stock was delayed by the company, as alleged, until about July 16, 1928, and such delay is alleged to have occasioned the damages for which the suit is brought.

█ The first fundamental reason why the judgment in favor of the plaintiff cannot be permitted to stand is found in the fact that the plaintiff's case is not one for conversion of stock in the corporation, but merely one for damages for delay in issuing stock which was, in fact, later delivered and accepted by the plaintiff. Obviously such damages for delay would be nominal, and hence any recovery whatever above nominal damages must necessarily be in the nature of special damages. Damages resulting naturally, but not necessarily, from acts complained of, are special damages. Damages necessarily arising from breach of contract and not reasonably contemplated by the parties as likely to arise therefrom cannot be recovered without allegations and proof of knowledge by the parties breaking it of the special circumstances producing such damages. West Texas Utilities Co. v. Nunnally (Tex. Civ. App.) 10 S.W.(2d) 391, and authorities there cited.

█ There is absent from the plaintiff's pleadings in this case any allegations and proof of knowledge on the part of the railroad company of the special circumstances under which the plaintiff would have obtained par value for his shares of stock had they been issued to him at the time demanded, and it is not alleged that the company had any notice whatever from him that he would have or contemplated selling the stock at that time, or for what price. It is fundamental that special damages must be pleaded in order to be recovered. A judgment must have support in the pleadings, and without such support it cannot be entered. West Texas Utilities Co. v. Nunnally, supra. Such is the plaintiff's case.

█ Another reason why the judgment is fundamentally erroneous appears in this: Ricks' right to demand the issuance of the stock on January 30, 1927, was no greater than that of J. T. Anderson and the twenty-three other subscribers to the same, had they presented their respective certificates of subscription to the company at such time and demanded an issuance of paid-up stock to the amount represented by the portion of the purchase price that had actually been paid by them for the same. In this connection the plaintiff's pleadings allege, "Said stock had not been issued to them, due to the fact that the entire amount of stock subscribed for had not been fully paid," and this reason why the company had not done so should be considered in the light of section 6, art. 12, of the Constitution, which provides, "No corporation shall issue stock or bonds except for money paid, labor done or property actually received * * *," and also in the light of article 1336, Revised Civil Statutes 1925, which further provides, "If any stockholder shall neglect to pay any installment as required by the board of directors, the directors may declare his stock and all previous payments forfeited to the use of the company. * * *"

██ From an inspection of the plaintiff's pleadings generally, and especially the excerpt above, it is apparent that J. T. Anderson and the twenty-three other subscribers had no right or power under the law to require the issuance to them of paid-up stock merely to the extent of the amount of cash they had paid in, and if, as alleged by the plaintiff, the Cisco & Northeastern Railroad Company promised them to do so in the manner alleged, such agreement constituted nothing more than a nudum pactum in law. The agreement was clearly without any consideration passing to the railroad company, which had already contracted to convey its stock to these subscribers upon specific terms and conditions, compliance with which alone entitled them to the issuance of the shares of stock for which they had subscribed. As plaintiff in the suit, and as an assignee of J. T. Anderson et al., Ricks stood in no better position in so far as having an enforceable contract for the delivery of the shares of stock here claimed. The plaintiff does not allege he had a contract with the Cisco & Northeastern Railroad Company whereby they would issue to him the stock if he would go out and purchase these outstanding subscriptions. He merely relies on an agreement between the company and the original subscribers made "prior to January 10, 1927," and, as noted, it was without consideration. He alleges no contract between himself and the railway company.

█ Further, we have searched the pleadings in vain for an allegation of a valuable consideration passing from these original subscribers or their assignee, Ricks, to the railroad company, and a pleading without such material allegations is wholly insufficient to support a recovery in a suit like this, which obviously is based upon an oral contract. As

said in Townes' Texas Pleading (2d Ed.) 496, "Consideration must always be alleged and proved in oral contracts."

In the case of J. M. Radford Grocery Co. v. Jamison (Tex. Civ. App.) 221 S.W. 998, 1000, it is said: "A declaration in an action on a contract must aver every material part of it. So much of the contract as is essential to the cause of action should be specially set out. The material facts of a contract cannot be presumed. * * * A declaration in an action on a contract which does not state the time at which the defendant should have performed is bad on demurrer. Where no time for performance is specified in a contract, it should be averred that it was to be performed on request, or within a reasonable time, and that such request was made or that a reasonable time has elapsed. * * * The petition alleges no consideration. In our system of pleading no presumption of consideration exists, and one seeking to enforce a contract, or to recover damages for its breach, is required to both plead and prove a valid consideration for the undertaking."

The above is a statement of sound propositions of law, and the plaintiff's pleadings in this case are deficient in both respects and quite certainly so in the one relating to consideration. The necessity of alleging and proving a consideration in an oral contract in order to enforce its terms is a rule elementary and long established by the decisions in this state. In addition to the above authorities we cite. Jones et al. v. Holliday, 11 Tex. 412, 62 Am. Dec. 487; Richarz v. Wolcken, 34 Tex. 102; Texas Mut. Life Ins. Co. v. Davidge, 51 Tex. 244; Ellerd v. Ferguson (Tex. Civ. App.) 218 S. W. 605; Elliott Lumber Co. v. Mitchell (Tex. Civ. App.) 241 S. W. 221; Bruce v. Laing (Tex. Civ. App.) 64 S. W. 1019; Western Union Tel. Co. v. Henry, 87 Tex. 165, 27 S. W. 63; Lewis et al. v. S. W. T. & T. Co. (Tex. Civ. App.) 59 S. W. 303.

Evidently the "agreement" referred to in the plaintiff's pleadings, and sought to be made the basis of legal liability in this suit, is an agreement without consideration, and one which the courts never undertake to enforce, and we think it is so whether viewed from the standpoint of the plaintiff, Ricks, or from the standpoint of the original subscribers, were they here endeavoring to enforce the same rights as against the company.

The views here expressed render it unnecessary to notice other contentions in the briefs. For the reasons assigned, the judgment of the trial court is reversed, and the cause remanded.

## On Rehearing.

In his motion for rehearing, appellee says: "The promise to issue the stock is not the basis of appellee's cause of action. The basis of it is the failure to issue the stock paid for and in reality it *would have not been necessary for the appellee to have alleged this additional promise.*" (Italics ours.) Upon this view the duty sought to be enforced by the suit is one imposed by law and not by contract. It would be a tort. Such a theory of recovery would be that one who had subscribed to the capital stock of a corporation and had paid only a part of same could, without offering to pay the balance due, make demand for the issue of stock to him in the amount that his partial payment would equal, and then put the corporation in default if it refused to do so. We think clearly the law imposes no such duty on the corporation, and therefore gives no such right to a subscriber to stock. It would be wholly inconsistent with the right of the corporation to forfeit stock subscriptions for failure to pay the unpaid part of the subscription price.

If such was the theory upon which judgment was sought, what damages could be said to have been foreseeable as the direct and proximate result of failure to perform the alleged duty? In this inquiry it is important to keep in mind that it was not a refusal to issue the stock, such as to constitute a conversion, that was charged, but delay in issuing the stock. What fact was alleged to show, or charge appellant with notice, that a mere delay in issuing the stock would result in injury to appellee? In the first place, if the duty was one imposed by law, no reason was alleged to show why it was necessary that the stock be issued in order to enable appellee to make a sale of same. It appears he bought it without it having been issued. If there were any special facts showing that he could not make a sale of it until it was issued, it was necessary that such facts be alleged. In the second place, no fact was alleged to show that appellant knew or should have known that, while delaying the issuing of the stock, appellee contemplated a sale of the stock, or had an opportunity to sell same at the higher price.

That the damages received were not such as necessarily resulted from the delay in issuing the stock is apparent when we consider that there would have been none if a sale could have been made just as well without the stock being issued, or if the market value of the stock had increased.

But, regardless of appellee's contention noted above, we construe the pleading as attempting to state a cause of action based upon a contract with the subscribers to the capital stock to issue to them or their assigns stock equal to the payments made on the subscriptions.

The pleading did not allege the existence of such a contract. It alleged an agreement. A mere agreement does not import a legal obligation. There must be a consideration to make it such. No consideration was

alleged. For that reason, as well as the others discussed in the original opinion, we overrule the motion for rehearing.

HICKMAN, C. J., disqualified and not sitting.