## GUGENHEIM v. HANCOCK.
### No. 6062.

Court of Civil Appeals of Texas. Amarillo.
May 15, 1950.

Rehearing Denied June 19, 1950.

Singleton, Edwards & Truelove, Amarillo, for appellant.

Monning & Monning, Amarillo, for appellee.

STOKES, Justice.

Prior to May 2, 1947, the appellant, A. D. Gugenheim, and his son and daughter, A. D. Gugenheim, Jr., and Betty Manheim, were partners, doing business at Amarillo and Hereford under the trade-name of A. D. Gugenheim Company. On that date they entered into a contract with the appellee, Austin P. Hancock, by the terms of which the parties agreed to incorporate the business under the corporate name of A. D. Gugenheim Company, Inc. The contract provided that the capital stock of the contemplated corporation should be $150,000, divided into shares of the par value of $100 each and that the capital stock would be fully paid in. It further provided that appellant would subscribe for $70,000, A. D. Gugenheim, Jr., would subscribe for $30,000, Betty Manheim would subscribe for $30,000, and that appellee would subscribe for $20,-000 of the capital stock. The subscriptions for capital stock by appellant and his son and daughter were to be paid by transferring to the corporation assets then belonging to the partnership and having a value acceptable to the Secretary of State of $130,-000 and that appellee would pay into the corporation cash for the capital stock subscribed for by him. The contract further provided that appellant would forthwith sell and transfer to the appellee 250 shares of appellant's capital stock, having a par value of $25,000 and, in payment therefor, appellee would execute and deliver to appellant his promissory note in the principal sum of $25,000, payable to appellant on or before fifteen years after date, and bearing six per cent interest. The note was to be paid out of the dividends derived from the

entire 450 shares owned by appellee, which consisted of the 200 shares subscribed for by him and the 250 shares sold to him by appellant. To secure the payment of the note, the contract provided that appellee would pledge to appellant, as collateral, the entire 450 shares owned by appellee and the dividends earned by all of appellee's stock would be applied, first, to the interest and then to the principal at the rate of at least $2,000 a year.

The corporation was organized in accordance with the contract and the capital stock subscribed for as provided therein, appellee paying into the corporation $20,000 for the 200 shares for which he subscribed and appellant and his partners conveying to the corporation the property provided for therein. Appellant became the president of the corporation and appellee its secretary-treasurer at monthly salaries provided by the contract. After the organization was effected, the capital stock was issued in accordance with the contract and appellant sold to appellee 250 shares of the stock which had been taken by appellant and appellee executed and delivered to appellant his non-negotiable promissory note for the sum of $25,000 and appellee delivered to appellant the 200 shares subscribed for by appellee and appellant retained the 250 shares which he had purchased and sold to appellee, and held the same as collateral and security for the payment of appellee's note.

After the corporation had existed for about fourteen months, differences arose between appellant and appellee concerning the question of whether or not it was earning money and succeeding in the manner in which it should. The differences ultimately developed into a controversy between them and appellant proposed that appellee withdraw from the company, offering to repay to appellee the $20,000 he had invested in the capital stock and cancel and return to him his note for $25,000. Appellee declined this offer, but negotiations continued for some time and it was finally agreed between them that appellee would surrender to appellant all of his capital stock and that appellant would pay him the sum of $26,300 for his entire interest in the corporation and cancel and return to appellee his note

for $25,000. After the lapse of several weeks, during which time appellant contends he was endeavoring in every possible way to procure the money with which to discharge his agreement with appellee, and after appellee had made repeated demands that appellant comply with his contract, appellee filed this suit on May 24, 1949. In his petition appellee alleged the facts substantially as above detailed and he prayed that upon final hearing, he have judgment against the appellant for the sum of $26,300, the agreed purchase price of his capital stock, with interest thereon at the rate of six per cent per annum from January 1, 1949; for the cancellation and surrender to him of his note in the sum of $25,000; that appellant be required to produce in court the 450 shares of capital stock owned by appellee so that all of it could be transferred to appellant; for costs of suit and general relief.

A detail of the allegations of appellant's answer is not necessary; suffice it to say that they were sufficient in all respects to raise the issues presented by the record for our consideration in this appeal. The case was submitted to a jury upon two special issues, in answer to which the jury found that the contract of sale was entered into by appellant and appellee on November 20, 1948; that appellee agreed to transfer to appellant all of appellee's stock in the corporation; and that, in consideration therefor, appellant would pay to appellee the sum of $26,300 on or before January 1, 1949, and cancel the note of $25,000 executed by appellee to appellant. It further found that the agreement was not conditioned upon appellant's being able to borrow money with which to carry out his part of it.

Each party filed and urged a motion for judgment in his favor, appellee's motion being based upon the verdict of the jury and appellant's motion being in the nature of a motion for judgment non obstante veredicto. The court overruled appellant's motion and sustained appellee's motion and entered judgment in his favor in accordance with the verdict of the jury. Appellant filed and urged a motion for a new trial, which was overruled, and he duly excepted and perfected an appeal.

Appellant urges a large number of assignments of error but we do not consider it necessary to discuss them in detail. His first contention is that appellee's suit was, in effect, a suit in equity for specific performance of the contract of November 20, 1948, under which appellee claimed, and the jury found, that appellant and appellee entered into a contract in which appellee sold to appellant all of his interest in the corporation and appellant agreed to pay him therefor the sum of $26,300. His contention is that the legal remedy of compensation for damages was available to appellee; that it was adequate and complete; and that, not having established the absence of a legal remedy, appellee was not entitled to prosecute a suit in equity for specific performance of the contract.

In support of this contention appellant invokes the rule of law laid down by the Supreme Court in the case of Tufts v. Lawrence, 77 Tex. 526, 14 S.W. 165, 166. In that case the court said: " 'Where the contract of sale is executory, and for an article which is not in existence at the time of the sale, but is to be manufactured or made, or is to be grown, no property therein passes to the vendee until the thing is not only completely finished and ready, but is either actually delivered to him, or at least is set aside and appropriated to him, and accepted by him.' "

The rule announced in that case has been adhered to by our courts on numerous occasions, particularly in the cases of Amsler v. Cavitt, 210 S.W. 766, and Manning Rubber Co. v. Blackstone Drug Co., 115 S.W. 2d 1137, by this court. The rule invoked by appellant does not apply to this case, however, because the capital stock in the corporation of A. D. Gugenheim Company, Inc., was issued in accordance with the original contract and was in the hands of appellant as collateral security to appellee's note then being held by appellant. The rule contended for by appellant applies where the contract of sale is executory and, in each of the cases above cited and relied upon by appellant, the contract involved the sale of articles which were not then in existence but were to be manufactured, produced, made or grown in the future. The holdings were to the effect that, under such conditions, no property or title passes to the vendee until the thing sold is not only completely finished and ready for delivery but is either actually delivered to the purchaser or at least set aside and appropriated to him and accepted by him.

In the Manning Rubber Company case the contract involved the sale of a large number of cellophane wrappers which were to be prepared for the purchaser by the seller and which were not completely manufactured or made prior to the seller's breach of the contract. This court quoted from the Tufts case, supra, and held that, in this country, there is substantial uniformity in the holdings of the courts that a sale of an article yet to be manufactured is executory in its nature and no title passes until the article is manufactured and notice thereof given to the purchaser, or some act is performed by the seller which has the effect of setting it apart to the purchaser. It was further said that, when the article is completed and the buyer notified thereof, the title passes unless the seller is bound to deliver it at some place other than the place of its manufacture. In that event, it was said, the seller can recover the contract price of the sale.

We think the rule announced by the Court of Civil Appeals of the Fourth District in the case of Smith v. Ratliff et al., 157 S.W.2d 945, applies to this case. In that case Ratliff sued for the balance due upon the contract price of certain shares of corporate stock. The shares of stock were tendered into court by him and the judgment directed the clerk to deliver them to Smith, the purchaser. The appellant, Smith, made the same contention on the appeal that appellant presents here, that is, that the suit was in effect, one for specific performance, which was unauthorized because no special circumstances were shown which would justify the entry of a judgment for an amount other than the difference between the contract price of the corporate stock and its market value at the time of the breach of the sales contract. In passing upon the question, Justice Norvell, speaking for the court, held that, in such cases, the seller of the stock may retain the property

and recover the difference between the contract price and the market price, or hold the property for the buyer and recover the contract price, or resell the property for the best price obtainable at the place of delivery and recover the contract price and all reasonable expenses of the sale, less the net amount realized at such sale. These three remedies have been held many times by our courts to be available to the seller of personal property in esse and, in this case, appellee availed himself of that one which authorizes him to sue for the contract price of the property. Bowden v. Southern Rock Island Plow Co., Tex.Civ.App., 206 S.W. 124; Waples v. Overaker et al., 77 Tex. 7, 13 S.W. 527, 19 Am.St.Rep. 727; Lammers v. Wolfertz, Tex.Civ.App., 164 S.W. 1102; Campbell v. Woods, 122 Mo.App. 719, 99 S. W. 468; Klein et al. v. Johnson, 191 Mo. App. 453, 178 S.W. 262.

Appellant makes the further contention that the contract of sale between appellant and appellee was an executory contract and therefore the rule announced by the Supreme Court in the Tufts case, supra, and other cases cited by him should be applied. In our opinion the contract between the parties here involved was not an executory contract but was an executed one. Much has been written by the courts concerning the question of when a contract is executory and when it becomes executed. Regardless of any doubt that might once have existed, it has long been settled that an executed contract is one wholly performed on one side, whether it is performed on the other side or not. Where one of the parties has done everything required of him by the terms of the contract and nothing remains for him to do except to receive the purchase price, the contract is executed and the seller has his choice of the three remedies which we have detailed above. Appellant contends, however, that appellee was still under obligation to perform other duties before the contract would be completely performed, and it had not, therefore, been wholly executed on his part. He says that appellee subscribed for 450 shares of the capital stock and that, since he had paid for only 200 shares, none of his stock could be legally issued to him. In support of this contention he invokes the rule of law that prohibits the issuance of stock before it is fully paid for, and that stock subscriptions are indivisible, that is, the capital stock subscribed for cannot be issued piecemeal as it is paid for by the subscriber. Cisco & N. E. R. Co. v. Ricks, Tex.Civ.App., 33 S. W.2d 878. In pursuing this contention appellant, in our opinion, has adopted an erroneous premise. He seems to assert that appellee originally subscribed for the entire 450 shares which were owned by him in the corporation. If that were true, his assertion as to the law would probably be correct. According to the record, the original contract under which the corporation was afterwards organized provided that appellant and the members of his family would subscribe for $130,000 of the capital stock and that appellee would subscribe and pay cash for $20,000 worth of it, thus subscribing and paying for the entire amount of the corporation's stock. It further provided that appellant would then sell to appellee $25,000 worth of his capital stock, take appellee's note therefor and hold all of appellee's stock in the corporation as collateral security of the note. These provisions of the original contract were carried out and, when the sales contract was made between appellant and appellee, appellant had in his possession all of appellee's capital stock in the corporation. Thus it will be seen that appellee had fully paid for all of the capital stock subscribed for by him and that all of his capital stock was in the hands of appellant at the time the contract of sale was made between them. There was, therefore, nothing remaining for appellee to do except to receive from appellant the contract price of his capital stock.

In this connection appellant further contends that the only manner in which capital stock can be assigned and transferred from one person to another is by the owner endorsing it or executing a separate instrument of sale. We are not impressed with this contention because the undisputed testimony showed that appellant had possession of the stock at all times after it was issued and, since he was its purchaser, and already had possession of it, there was nothing remaining for appellee to do. If it was

essential that the stock be endorsed or a separate instrument evidencing the sale be executed, the original contract under which the corporation was organized, together with the delivery of the stock to appellant, was a sufficient assignment of it to appellant. He took it and held it under the agreement contained in that contract and the subsequent contract of sale merely converted the agreement into an actual sale to appellant instead of a pledge, as provided by the original contract. We conclude, therefore, that the contract of sale was a legal transaction; that it was an executed contract; and that no error was committed by the court in the respects here complained of by the appellant.

The next contention made by appellant is that, at the time the contract of sale was entered into, both appellant and appellee knew that it would be necessary for appellant to sell or mortgage some of his real estate in order to comply with the sales contract and that the sales contract involved the sale or mortgage of real estate. He contends, therefore, that the parol sales contract was within the statute of frauds and not enforcible. There was nothing in the contract of sale which pertained in any respect to the sale or mortgage of real estate. It was simply a contract under which appellee sold to appellant and appellant purchased and agreed to pay for the capital stock of the corporation then owned by appellee. The court submitted to the jury the question of whether or not the contract of sale was conditioned upon appellant's being able to borrow money with which to carry it out and the jury answered it was not so conditioned. In our opinion there is, therefore, no merit in this contention.

Appellant presents and urges a number of other assignments and points of error but, in our opinion, those we have discussed are controlling of the disposition we must make of the appeal. Some of the points of error raise questions which were not included in appellant's motion for a new trial and those which were included in it are either disposed of by what we have said or become immaterial in view of our holdings upon those discussed.

We have carefully considered all of the contentions presented by appellant and, in our opinion, none of them presents reversible error. The judgment of the court below will, therefore, be affirmed.