## CLEARVIEW LOUVER WINDOW COR-PORATION, Appellant,

v.

## RUBIN GLASS & MIRROR COMPANY, Appellee.

### No. 10350.

Court of Civil Appeals of Texas.

Austin.

Nov. 2, 1955.

Rehearing Denied Nov. 30, 1955.

W. E. Hunnicutt, Dallas, W. E. Dyche, Jr., James T. Wright, Houston, Hassell & Hassell, Dallas, for appellant.

Shapiro & Corman, Houston, for appellee.

ARCHER, Chief Justice.

This is an appeal from the judgment of the 133rd District Court of Harris County, Texas, awarding plaintiff, Rubin Glass & Mirror Company, a corporation, the sum of $12,423.83 as the contract price of certain glass allegedly sold to defendant, Clearview Louver Window Corporation, plus the sum of $804.68 as storage on the goods in controversy. Plaintiff had sued the defendant for the contract price of certain glass strips described in purchase orders issued by defendant. A part of the materials had been delivered and paid for. The remainder was physically tendered to defendant, refused, and thereafter stored by plaintiff in a warehouse in Dallas. Defendant answered that it had taken and paid for all, or substantially all, of the glass ordered from defendant and that the glass tendered was in excess of its contracts to purchase and by general denial.

On trial without a jury, the court entered judgment for plaintiff for the full amount of its claim, the gross contract price of the glass tendered, $12,423.83, and in addition, its warehouse charges of $804.-68, with interest on both the principal of the judgment and the warehouse charges.

The appeal is predicated on eight points and are to the effect that the court erred in rendering judgment for the full amount of the selling price of certain glass strips, which defendant had contracted for and delivery had been tendered, which was refused, since plaintiff's suit was for breach of contract and its measure of damages was the difference between the contract price and the value of the glass when tender was made; that the remedy of the plaintiff for breach of the contract to purchase the glass strips manufactured for buyer is the difference between the contract price and the market value at the time of breach, and the seller was required to establish its loss by sufficient evidence that the finding of the court that plaintiff had no sale or market for the glass is without support in the record, but is contradicted; that the test of the value is not whether plaintiff knew the value, but whether such value was determinable and the record affirmatively shows that the property had a substantial value and was salable; that the finding that the materials in storage were subject to defendant's withdrawal and completely at its disposal is not supported, but is contradictory; that the contract was for the purchase of an aggregate amount of glass, and the acquisition of the glass for the Florida Plant was in partial liquidation of that obligation, and the finding that it was an additional purchase is contrary to the great weight of the evidence; that it was error to charge the purchaser with the cost of storing the materials, because there was no contract therefor and no showing that the nature thereof required special handling.

Appellant briefs and presents the first four points together since they involve the same or overlapping portions of the record.

Appellant takes the position that appellee's pleading is that the delivery of the goods was made pursuant to prior contracts; second, that if appellant had not expressly agreed to pay the prices set out that it had promised to pay the then reasonable market value of the merchandise; and third, that appellee had sold the goods to appellant which had been specially prepared to appellant's specifications, and appellee had agreed to accept the goods and pay the sum of $12,423.83 under each allegation.

The court made extensive findings of fact and conclusions of law and found that defendant signed and delivered to plaintiff certain purchase orders, attached to plaintiff's pleadings, together with certain amending orders, by the terms of which the defendant ordered at the prices therein set out certain strips of glass for delivery in Dallas, Texas; that plaintiff accepted the purchase orders and prepared the strips of glass to the specifications set out in the defendant's orders, and delivered or tendered delivery of all the materials covered by defendant's change orders No. 1 from time to time from June 2, 1953 to, on, or about November 23, 1953, in accordance with defendant's requests; that the defendant paid, at the prices set out in the change orders No. 1 for the materials delivered through November 10, 1953 under such orders; that on or about November 20, 1953, the plaintiff shipped from Houston to defendant in Dallas, Texas the remaining glass strips to be delivered on defendant's said change orders No. 1, and are set out on copies of plaintiff's invoices; that defendant refused to accept the materials so tendered it at Dallas by plaintiff, and plaintiff placed such materials in storage in Dallas Transfer & Terminal Storage Warehouse Company in Dallas, and informed defendant of such storage for the account of defendant, and that defendant could have withdrawn the materials at any time; that plaintiff has paid the storage charges in the sum of $804.68.

The court found that the materials tendered were agreed on by plaintiff and that the amount due defendant is the sum of $12,423.83, the amount sued for, and that plaintiff had no other market for the mate-

rials so tendered and refused and that defendant continues to refuse to accept such tender.

That more than thirty days prior to institution of suit plaintiff made demand for payment of its debt and on defendant's failure to pay, the plaintiff employed the law firm of Shapiro & Corman to bring the suit and agreed to pay them a reasonable attorney's fee, and that the parties agreed in open court that if Article 2226, V.A.C.S. was applicable, such attorney's fees in the amount of 20% of plaintiff's recovery, but not to exceed $1,500 would be allowable by the court.

The court further found that the strips of glass delivered and those tendered for delivery were used, or were for the use by defendant in its manufacturing of what are commonly known as jalousie windows or doors.

The court found that plaintiff shipped to defendant in Florida all materials covered by purchase order No. FA468, and defendant accepted them and they were paid for in a satisfactory way to plaintiff; that such order was independent from all other transactions between plaintiff and defendant.

The court concluded as a matter of law that the defendant executed the purchase orders which were accepted by plaintiff and constituted a binding contractual arrangement between the parties; that deliveries were timely made and tenders of delivery were made to defendant of the materials and accepted by the defendant through October 19, 1953, and payments made therefor, or in some instances some material was returned by defendant and accepted by plaintiff and credit memorandum was issued to be used by defendant in offsetting any subsequent debt it might be obligated to pay to plaintiff.

That defendant requested plaintiff to delay shipments until on or about November 20, 1953, and plaintiff acquiesced in such request; that plaintiff discharged its obligation to defendant by shipping the balance of the material to defendant at Dallas on or about November 20, 1953, under the contracts of purchase and sale, and that the title to the materials so shipped and tendered became vested in defendant and defendant became obligated to pay plaintiff therefor as set out in the invoices, aggregating $12,423.83, being the contract price, and plaintiff was entitled to treat them as being defendant's materials and to sue and recover the contract price, and that the suit is on a liquidated demand, and interest is allowable from January 1, 1954.

That the materials were prepared by plaintiff on defendant's own specifications and upon defendant's unwarranted refusal to accept the materials, the plaintiff acted with due regard and properly for the preservation of said materials by placing them in storage in a Dallas warehouse for safekeeping for account of defendant and the defendant could have at any time unconditionally withdrawn such materials from storage; that the amount of $804.68 paid by plaintiff for storage from November 20, 1953 through the month of February, 1955, is a reasonable amount and a necessary expense properly incurred, and for which plaintiff is entitled to recover from defendant.

The court concluded, despite plaintiff's demand for its debt more than thirty days prior to filing suit in the form of a sworn account that this suit did not come within the provisions of Article 2226 and would not allow attorney's fees.

The appellee has assigned the action of the court in not allowing attorney's fees as error and this point will be disposed of later in this opinion.

From the original purchase orders it appears that appellant on June 10, 1953, placed with appellee its orders for approximately $35,000 in value of jalousie glass strips made of various kinds of glass all 3 inches in width and ranging in length from 22 to 44 inches. Appellee placed its orders with Pittsburgh Plate Glass Company for solex glass to fill the purchase orders made by appellant.

Two days after the original order appellant furnished to appellee its specifications, requiring the glass strips to be boxed with

not more than 100 strips per box, with tolerance limits and cutting and edging requirements. On June 15, 1953, appellant furnished to appellee its change orders modifying all the previously placed purchase orders so as to require cut lengths, and except for few cases, that the strips be made of Libby-Owens-Ford glass, with an aggregate cost of $35,880.79, varying in price from $15.88 per hundred to $75.75 per hundred, the total purchase orders would require cutting and packaging more than 78,000 of small pieces of glass and shipment to appellant in not fewer than 780 separate crates. The orders called for delivery in two weeks "first week July 1953, or immediately."

On August 18, 1953, appellee furnished appellant a list of its stocks of quarter inch solex plate glass, with the statement that "these lights were purchased specifically for Clearview and we hope that you will be able to help us move this excess stock * * *" and requested advice as soon as possible when delivery could be made.

On September 12, 1953, appellant placed its orders for various quantities of solex lights for delivery to Fort Lauderdale, Florida, and such orders were delivered on October 3, 1953.

On October 15, 1953, appellee wrote appellant insisting that it accept the remaining shipments on the June 1953 orders, previously delayed to meet appellant's convenience, and on October 23, 1953, appellant wrote appellee requesting delay in remaining shipments for a period of four weeks.

On November 20 and 23, 1953, appellee tendered to appellant the final shipments called for by the purchase orders and advised appellant that unless the shipments were accepted the merchandise would be stored at a named warehouse for appellant's account, subject to its order and at its expense.

The merchandise tendered and not accepted by appellant is described on five invoices, giving type, number of strips and the price aggregating a total price of $12,423.83.

We believe that the court's findings are reasonably supported by the record and that the court applied the law correctly, except as to not allowing attorney's fees.

The appellee had fully complied with its part of the contract and there remained only compliance by the appellant to complete the terms of the contract.

The appellee could have sold the glass at a fair sale and sued for the deficiency, or have treated them as its own and sued for the difference between the contract price and their market value on the date fixed for delivery, or to do as appellee did, hold the goods as the property of appellant and sue for the contract price, which latter remedy the appellee had the right to pursue as it did, there being no market for the goods. We overrule appellant's points numbers one, two, three and four. 37 Tex. Jur. (Sales), Sec. 272, p. 601; Smith v. Ratliff, Tex.Civ.App., 157 S.W.2d 945, error ref.; Gugenheim v. Hancock, Tex.Civ. App., 231 S.W.2d 935, error ref. n. r. e.

Appellant's points numbers four and five are directed to the failure of appellee to tender or deliver to appellant the warehouse receipts showing the storage of the goods.

We believe, that since judgment was for the full amount of the contract price and for the accrued storage charges, it had the effect of vesting title in appellant and such was at all times available to appellant. 78 C.J.S., Sales, § 458, pp. 106, 107.

The trial court was not requested to make provision in the judgment for delivery of possession of the glass merchandise and appellant stipulated that the glass listed in the invoices was tendered at Dallas and appellant refused to accept it, and that the property was placed in a warehouse.

Appellant's point number six complains of the action of the court in holding that the glass shipped to the Florida plant was a separate transaction and not a part of the merchandise contemplated for purchase in the several orders.

The record reveals that the order for the Florida plant was a separate one and all

obligations between both appellant and appellee have been complied with, and this is substantiated by the writing of the letter of October 23, 1953, by appellant to appellee requesting a delay in shipment of the remainder of the undelivered glass for a few weeks in which no mention is made of the delivery of the glass shipped to Florida some weeks prior thereof, and we overrule this assignment.

Points numbers seven and eight contend that there was no contract to pay storage costs of the material after the refusal by appellant to accept delivery of same.

We believe that the court was justified in holding that the property had been stored for safekeeping for appellant and recoverable by appellee being reasonable. Bowden v. Southern Rock Island Plow Co., Tex.Civ.App., 206 S.W. 124; Weber Motor Car Co. v. Roberts, 203 Mo.App. 509, 219 S.W. 994.

Appellee has a counterpoint that it was error for the court to conclude as a matter of law that this suit is not one coming within the provisions of Article 2226, and that appellee, as plaintiff, is not entitled to recover attorney's fees.

Appellee alleged that because of the failure and refusal continuing for more than thirty days after demand for payment of defendant to pay for the goods and merchandise, plaintiff had been compelled to hire the attorney, Joe Corman, to prosecute the suit.

On trial it was stipulated that a reasonable fee for the services rendered was $1,500 and the trial court so found.

The court concluded as a matter of law that this suit was not one coming within the provisions of Article 2226 and that appellee was not entitled to recover attorney's fees.

We believe that appellee was entitled to recover attorney's fees. Article 2226 provides for attorney's fees in several instances, such as "materials furnished." Mutual Lumber Co. v. Sheppard, Tex.Civ.App.,

173 S.W.2d 494, and cases cited therein; Davenport v. Harry Payne Motors, Inc., Tex.Civ.App., 256 S.W.2d 245.

The judgment of the trial court will be reformed so as to allow appellee $1,500 as attorney's fees and as reformed the judgment of the trial court is affirmed.

Reformed and affirmed.