HERMAN E. PANKONIN, APPELLANT, V. FRED H. GORDER ET AL., APPELLEES.

FILED DECEMBER 4, 1914. No. 17,920.

1. **Landlord and Tenant: CONTRACT: LEASE.** The contract of sale and contract of lease, and the contract supplemental thereto, set out in the opinion, construed together as constituting the contract of sale and lease between the parties.

97 Neb. 22

2. **Damages: Liquidated Damages: Good Will.** The good will of an established business is a merchantable commodity, and where the same is expressly sold with the business to which it applies, and the measure of damages for a breach of the sale thereof is agreed upon and stipulated between the parties at the time, such agreement will be sustained by the courts unless it is made to appear that the amount so agreed upon is so excessive as to constitute a penalty, rather than compensation.

3. **Judgment: Res Judicata: Occupancy of Premises.** The decree of the district court, affirmed by this court in *Gorder & Son v. Pankonin*, 83 Neb. 204, examined, and *held res judicata* as to the question of the right of defendants to occupy the premises involved, for the period of time in controversy, on the same terms and conditions under which they entered into the possession of the same.

Appeal from the district court for Cass county: Harvey D. Travis, Judge. *Affirmed.*

*D. O. Dwyer* and *A. L. Tidd,* for appellant.

*Rawls & Robertson* and *Jesse L. Root, contra.*

Fawcett, J.

Plaintiff instituted this action in the district court for Cass county, to recover rent for certain premises in the village of Louisville, in that county. The jury returned a verdict in favor of defendants, upon which judgment was entered, and plaintiff appeals. The issues joined by the pleadings and necessary to be considered will sufficiently appear in the discussion of the case.

In February, 1901, plaintiff was a dealer in implements and harness in the village of Louisville. On the 13th of that month he entered into a contract to sell to defendants, or to the firm of Fred Gorder & Son, of which firm the defendants are surviving partners, his stock of goods, with certain exceptions which need not be noted, and in and by the same instrument contracted to rent the buildings, and all warerooms in which the business had theretofore been conducted, to the defendants for a term of one year, with the privilege of five years or more, at a monthly rental of $22, and contracted "to stay out and

not engage in the implement or harness business in Louis-
ville, Neb., so long as the first party (the defendants)
rents said building at above rent." Two days later, on
February 15, the parties executed a formal lease for a
term of five years, from February 20, 1901, with an op-
tion to defendants to have a renewal of the lease at the
expiration of that term for a period of one year or more,
up to five years. In these contracts a reservation was
made by plaintiff of office room in one of the buildings.
On September 12, 1902, the parties entered into another
agreement, which purported to be additional and supple-
mental to the agreement of February 15, 1901. This sup-
plemental agreement recited that it was made in consid-
eration of the settlement of certain differences which had
arisen between the parties, on account of a breach by
plaintiff of the conditions of the lease entered into on Feb-
ruary 15. It stipulated that, in addition to the covenants
in the former contract contained, plaintiff was to have the
use of one-half of the building on lot 294, and an increase
of the monthly rental to $23.50 a month. The lease exe-
cuted February 15 recited: "Also in consideration of the
covenants and agreements hereinafter specified to be done
and performed by second party, first party agrees to, and
hereby does, sell and assign to second party his good will
in the business of general harness store and implement
store, excepting that of pumps and windmills, which he is
now carrying on in said buildings, located on said prop-
erty; and agrees not to engage in the same business in the
village of Louisville, during the continuance of this lease.
In consideration of the leasing of said premises from
said first party, and of the agreement on the part of the
first party to remain out of the general harness and imple-
ment business in the village of Louisville as above specified
during the term of this lease, second party hereby agrees
with the first party to pay said first party the sum of
twenty-two ($22) dollars per month, payable monthly in
advance. It is further stipulated and agreed between the
parties that in case first party, at any time during the period
of this lease, carries on or engages in the general harness and

implement business such as he is selling to second party, that second party is to have the use of said buildings from such time until the expiration of this lease free of charge without the payment of any rent. It is further mutually understood and agreed between the parties hereto that, at the expiration of the term of this lease, second party has the option of leasing said buildings for a period of one year or more up to five years for the same consideration, and upon the same terms and conditions as are in this lease named." In the agreement of September 12, 1902, in which the rental is increased to $23.50 a month, plaintiff again agreed in express terms that he would not engage in the general harness and implement business, such as he had sold to defendants, in the village of Louisville, either on his own account or in partnership with any other person either directly or indirectly, and that, in case he did so engage in that business, defendants were to have the use of the buildings from such time until the expiration of the lease free of charge, without payment of rent, "and that such rental value is hereby fixed and agreed between the parties hereto as liquidated damages which said second party will sustain by reason of any breach of said contract and lease by the said first party. The intention of the first party being as it was in said former agreement and lease, to sell and assign to second party his good will in the business of general harness store and implement store, which he sold to second party."

It will be seen from an examination of these three instruments that they should be taken and construed together as constituting a contract of sale and leasing by plaintiff of his business and buildings to the defendants. In due time, prior to the expiration of the five-year period, defendants notified plaintiff of their election to continue for another five years and requested the execution of a new lease. This plaintiff refused; whereupon defendants brought suit in the district court for Cass county, for specific performance of their contract, in which suit the three contracts of sale and leasing above referred to were set out. In that suit the plaintiffs (defendants here) also

prayed for an injunction restraining the defendant there (plaintiff here) from again engaging in the business, the good will of which he had sold, during the five years' extension which plaintiff in that suit claimed they were entitled to. Upon a hearing the district court entered a decree in which it found generally in favor of the plaintiffs, except in so far as plaintiffs prayed for an injunction enjoining defendant from engaging or continuing in the business which he had sold. As to that the court found: "That plaintiffs have an adequate remedy at law for liquidated damages provided for in the contract of lease involved herein." The court further found that the plaintiffs were entitled to a decree of specific performance "of the option given to plaintiffs in said former lease and contract for five years from February 20, A. D. 1906 (the expiration of said former contracts and lease), upon the same terms and conditions, and for said terms and conditions reference is hereby made to said former contracts and leases, which are also set forth in plaintiffs' petition," and adjudged and decreed that the defendant execute to plaintiffs a lease of the premises "upon the same terms and conditions as set forth in the contracts and leases under which plaintiffs held the premises for the five years terminating in 1906, and that, in default thereof, this decree stand in lieu thereof, and for the several provisions reference is hereby made to the above findings and said original contracts and leases as set forth in plaintiffs' petition, and said lease shall be for the term commencing February 20, A. D. 1906, and terminating February 20, A. D. 1911, except in said lease there shall be no provision for an option to extend said lease for any further period after February 20, A. D. 1911."

It will be seen from this decree that the district court treated the contract of February 13, the lease executed February 15, and the supplemental agreement of September 12, as constituting the contract under which defendants were occupying the premises, and decreed to defendants the right to continue such occupancy for a further period of five years. From that decree the defendant

(plaintiff here) appealed to this court. On a, hearing of that appeal the decree of the district court was affirmed. *Gorder & Son v. Pankonin,* 83 Neb. 204. The five years' extension covered by that decree are the five years for which plaintiff is seeking to recover rent in this action.

It appears, therefore, that the question of the right of defendants to occupy the premises for that period of time for a rental of $23.50 a month provided plaintiff did not reengage in the business which he had sold to them, or without rent in case he violated his agreement and did re-engage in such business, is *res judicata.* That plaintiff did, on or about February 20, 1906, the date of the expiration of the first five-year period, engage in this business, contrary to the terms of his contract, and that he continued so to do during the whole period of time for which he now seeks to recover rent, is undisputed, and that he should now be held liable for the liquidated damages for such breach which had been agreed upon between the parties should not now be questioned. It was one of the conditions upon which defendants purchased his business. It constituted a part of the consideration which defendants paid for the business and use of the premises. Defendants paid plaintiff $4,200 for his business, consisting of his stock and good will, on the conditions named in the contract, as above set out. The good will of an established business, for which a party was paying such a sum of money, was unquestionably of great value. The parties themselves fixed the value of a loss of the good will so sold at $23.50 a month during all of the time defendants continued to occupy the property after they had been deprived of such good will. It was not a forfeiture, and the authorities cited upon that point do not apply. It was a sale of a merchantable commodity—good will—for a definite period of time, at a fixed value per month. It was in every respect fair and should be enforced by the courts.

This so completely disposes of the merits of the controversy that nothing more really need be said. We will, however, refer to the objections to the refusal of the court to give two instructions requested by plaintiff, viz., in-

structions 2 and 3. Instruction No. 2 was to all intents and purposes a direction for the jury to return a verdict for the plaintiff. It was properly refused. By instruction No. 3 the court was asked to tell the jury that the provision for "forfeiture and liquidated damages in the leases dated February 13, 1901, February 15, 1901, and September 12, 1902," were limited to the period from February 20, 1901, to February 20, 1906, and did not run with the renewal. This instruction was properly refused. It did run with the renewal and had been so adjudicated in *Gorder & Son v. Pankonin, supra.* Exhibit J was properly admitted. It was not an offer of compromise. It was an offer to purchase from defendants, for $100, their right to the use of the premises for the unexpired term of their lease as fixed by the decree in *Gorder & Son v. Pankonin, supra.*

Plaintiff had a fair trial, the verdict is amply sustained by the evidence, and we find no error in the rulings of the trial court.

AFFIRMED.

REESE, C. J., SEDGWICK and HAMER, JJ., not sitting.