## TEXAS & P. RY. CO. et al. v. MERCER.
### No. 11134.

Court of Civil Appeals of Texas. Dallas.
March 11, 1933.

Rehearing Denied April 8, 1933.

T. D. Gresham, of Dallas, Head, Dillard, Maxey-Freeman & McReynolds and J. F. Holt, all of Sherman, for appellants.

Webb & Webb, of Sherman, for appellee.

JONES, Chief Justice.

In a suit by appellee, E. F. Mercer, for damages alleged to have resulted to his business as a dairyman and truck gardener, because of the unlawful blocking of a public highway by appellants, the Texas & Pacific Railway Company and Gifford-Hill & Co., a construction corporation, appellee was awarded the sum of $5,000, and appellants have perfected their appeal to this court. The necessary facts are:

Appellee owns a tract of land located some five or six miles northeast of the city of Sherman, on which for several years he had conducted a dairy and a truck farm. He had operated the dairy for approximately ten years for the purpose of marketing dairy products, especially sweet milk, in the city of Sherman; he had begun with four milk cows and, at the time under inquiry, had increased his business to the extent that he was using the products of twenty-four cows. For several years he had raised and marketed tomatoes, canteloupes, roasting ears, and other vegetables. The public highway in question crosses the Texas & Pacific Railway near appellee's farm, and continues in a some-what southwesterly direction to the city of Sherman, where it connects with a paved street in said city. This highway is a graveled highway, maintained in good condition, and could be used by appellee in all kinds of weather, giving to him a smooth highway over which to transport his products to the market in the city of Sherman. Appellee's dairy and truck farm is some little distance from this highway, but there is a road from appellee's place entering the highway near the crossing that was maintained by appellee in such condition as that it could always be used by him in driving his truck loaded either with his dairy or garden products into the highway. Appellee could always reach the market at Sherman within 15 or 20 minutes from his starting time. The blocking of the highway crossing effectively cut off appellee's use of the graveled highway.

At the time under inquiry, there were a number of grocery stores in the city of Sherman that regularly purchased from appellee the milk used by them to supply their customers, and there were also a number of persons to whom he regularly delivered the milk required for their home consumption. Appellee, at such time, was making two morning deliveries of milk, one very early in the morning and the other later in the day, as his customers required. His garden products were delivered to those in the city of Sherman who desired to purchase them, but there does not seem to have been regular daily customers for his vegetables as existed for his dairy products, but he was able to dispose of all his stock of vegetables.

At the place where the highway crosses the railroad track, and in the immediate vicinity of such place, the railroad company directed the lowering of the grade on which its track was laid, and Gifford-Hill & Co. appears to have been the contractor employed to do this work. The lowering of the grade necessitated the blocking of the crossing, and hence, on August 12, 1929, the day this work was begun, the highway crossing was blocked. This was done without permission or order of the commissioners' court of Grayson county, and there was no detour crossing of the railroad provided for by appellants. The result was that when the railroad was reached on the highway, there was no way to cross over this railroad in order to get on the other portion of the highway, and there does not appear to have been any other crossing within any reasonable distance from the one in question. The result of the blocking of this highway was to prevent appellee from transporting his products to the Sherman market on any portion of the graveled highway. The only other feasible route that could be used by appellee in reaching the Sherman market was a narrow dirt road some distance from the graveled highway, and a route that could be

used only in dry weather, and even at such time was exceedingly rough and unsuited for the purpose of transporting bottled milk over it—this because of the hard and continual jolting of the vehicle, used to carry the milk, over the rough road.

When appellee was thus compelled to attempt to use this dirt road, to reach the market with his products, he was unable to reach such market in time for his early morning deliveries of milk and thereby lost this business; and frequently, when he made the later deliveries, because of the rough road and the consequent churning of the milk in the bottles, it would become sour and was an entire loss. This road passed over black waxy land and became impassable to automobiles during heavy rains, and at times even impassable to any character of vehicle. A greater portion of the time the graveled highway was blocked, the dirt road was impassable from frequent rains, and appellee could not make any deliveries of his products.

The blocking of the road continued from August 12 to September 28, 1929, at which time a temporary crossing was made by appellants. This crossing, however, could not be used in wet weather, and the road, because of continued rains, virtually was blocked until the first days of December, when a permanent crossing was made and the divided portions of the highway were again united. It thus appears that for approximately four months the highway crossing over the Texas & Pacific Railway was blocked from use by appellee.

As a result of the unauthorized closing of the highway, for a period of approximately four months, appellee's business as a dairyman was destroyed; his customers having turned to other dairymen for their supply of milk, and appellee was unable to secure these customers after he attempted again to enter the Sherman market with his dairy products. As a further result of the blocking of the highway, appellee's crop of tomatoes and cabbage was entirely destroyed, he was forced to permit his canteloupes to rot in the field, and his crop of roasting ears was entirely lost, except its value as matured corn.

The amount of damages suffered by appellant was submitted to the jury in the form of special issues, each item being separately submitted. In response to these special issues, the jury found that, as a proximate result of the unauthorized and wrongful blocking of the graveled highway, appellee sustained the following damages: (1) $400 for the loss of his tomato crop; (2) $75 for the loss of his canteloupe crop; (3) $20 for the loss of his roasting ear crop; (4) $25 for the loss of his cabbage crop; and (5) $125 for the loss of his milk products. These findings of the jury, totaling $645, are sustained by evidence, and are adopted as the findings of this court.

In addition to the above items, the court also submitted issues as to the value of broken milk bottles, occasioned by appellee attempting to use the dirt road to reach the market; also, damage to appellee's truck, occasioned by appellee attempting to use the dirt road when it was rendered impassable by rains. On these issues, the jury found, as a proximate cause of the blocking of the graveled highway, that appellee suffered the following damages: (6) $25 as the value of the milk bottles broken, and (7) $200 as damages to the truck. These findings, as to the value of the broken milk bottles and the amount of damages to the truck, are sustained by evidence, and are adopted as the findings of this court. The question as to whether the evidence sustains the findings of the jury, that these two items of damages were the proximate result of appellant's blocking of said highway, is reserved for later discussion.

In addition to the above items of damages submitted to the jury, the court submitted the following issues:

"Did the plaintiff sustain any loss of good will, as hereinbefore defined to you, to his dairy business by reason of the obstruction of the graveled road in question? Answer: Yes.

"Was the act and conduct of the defendants, in closing the road in question, the proximate cause of the damage, if any, to plaintiff's good will? Answer: Yes.

"What amount of damage did the plaintiff sustain, if any, to his good will in the dairy business by reason of the obstruction of the road in question? Answer: $4,130.00."

The court defined "good will" as follows: "You are instructed that 'good will' is the favor which the management of a business witness from the public and the probability that old customers will continue their patronage; the advantage or benefit which is acquired by business upon the mere value of the funds or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant and habitual customers, on account of its local position, or common celebrity, or reputation, skill, affluence, punctuality, or from other accidental circumstances."

Appellants specially excepted to the allegations to each item of damage, requested peremptory instruction in their favor, objected to the admission of any evidence as to any of the alleged items of damage, and timely objected to the submission to the jury of any of the items of damage, and have properly assigned errors on the adverse rulings of the court. As we construe appellants' various assignments of error, they are based on the theory: (1) That the damages pleaded and attempted to be proven by appellee are in the nature of special damages, of which no notice was given by appellee to either of the appellants; and (2) that the dam-

ages claimed are speculative, could not have been foreseen, and hence, as a matter of law, could not have been contemplated by appellants when the highway was blocked. It is claimed that the evidence does not sustain the finding of the jury on any of the items that the damages were caused by the blocking of said highway, and especially is this true in reference to items Nos. 6 and 7, and in reference to the damages for loss of good will. It is specially contended by appellants that the value of good will is never recoverable in this character of suit. Appellants also contend that the court committed reversible error in the admission of evidence over their timely objections. The nature of these assignments will appear from the discussion of these assignments.

■ It is true that the damages claimed by appellee, as the result of the unauthorized blocking of the graveled highway, are denominated "special damages," which are such damages that result naturally, but not necessarily, from acts complained of. Cisco & N. E. R. Co. v. Ricks (Tex. Civ. App.) 33 S.W.(2d) 878, 880. As a general rule, special damages are not recoverable, unless the defendant be visited with notice that plaintiff will suffer such damages. Appellants contend that there was no such notice given in the instant case, but we are of opinion that this contention is not borne out by the record. The undisputed evidence shows that appellee, on the first day the road was blocked, went to the person clearly appearing to be in charge of the work appellants were doing at this crossing, informed him of the fact that he would suffer damages unless he was permitted to use the highway in hauling both his dairy and garden products to the markets, and explained the reason why such damages would result from the blocking of the highway. It is true that the evidence does not disclose that this person was an official of either of the appellant corporations, or that he held a position of superintendent of the work being done, but it does disclose that he was directing and supervising the construction work, and that such person was placed there by appellants for such purpose. Having been placed in such position by appellants, and clothed at least with such apparent authority, they are in no position to claim that notice to him of the special damages that would result to appellee was not notice to them. All assignments of error in reference to this issue are overruled, as well as all assignments of error with reference to the admission of the evidence reciting appellee's conversation with such person. Similar conversations occurred frequently between appellee and persons in charge of this work, in which appellee gave notice from time to time of the harmful results to him because of the action of appellants in blocking the highway and providing no detour crossing. We therefore hold that appellants had notice of the special damages resulting to appellee by reason of the unauthorized blocking of the public highway.

■ The first five items of damages found by the jury amount to $645; each loss there enumerated was suffered by appellee, proximately caused by the unauthorized blocking of the highway, and appellants had due notice that appellee was being so damaged. Appellee had matured the crop of vegetables lost ,and because of the uncertainty as to the time when he could use the highway, he was compelled to maintain his overhead expense in order to be ready to reach his customers with such vegetables as soon as he could do so. It is manifest, therefore, that his loss was the retail price he could receive for the garden products in the Sherman market, the only market available to him. Appellee had been deprived of this retail price, by reason of appellants' wrongful act, and such price should be the measure of his damages. The court did not err in entering judgment for the said $645.

■■ Should appellee be allowed to recover the item of $24 found by the jury to be the value of milk bottles broken in his attempt to reach the Sherman market over the rough and narrow dirt road? When the graveled highway was closed to appellee, the demands of his business, as well as his duty to lessen the damages to appellants, required him to pursue any other reasonably safe route to reach the market. No duty rested upon him to attempt to use a route that would increase, rather than diminish, his damages. Apparently the only other route open to him was the narrow and winding dirt road, rough in good weather and impassable in bad weather. As to whether he should use this road to reach the market when it was in a rough or impassable condition, appellee was required to exercise his own judgment. If in the exercise of his judgment in this respect he made a mistake, and by reason of such mistake suffered damages in the matter of breakages of his milk bottles, his bad judgment, and not appellant's blocking of the highway, would be the proximate cause of the resultant injury. The blocking of the graveled highway did not compel him to use the dirt road when it was dangerous to the safety of his property. Appellee was experienced in the work of transporting his products in his truck to Sherman, and the condition of the dirt road was open and obvious to him. We are therefore of the opinion that there is no evidence to sustain the finding of the jury that the blocking of the highway crossing was the proximate cause of the breakage of the milk bottles. The same rule of law just announced, as to the breakage of the milk bottles, will apply to the damage to appellee's truck. This damage resulted solely from appellee's attempt to use the dirt road when it was impassable, and hence we

are of the opinion that no recovery can be allowed for items Nos. 6 and 7.

■■ Appellee was awarded judgment in the sum of $4,130 for loss of "good will." Such term, used in connection with a business, indicates that value which inheres in fixed and favorable consideration of customers arising from established and well-conducted business. Such value is based necessarily upon prospective profits to result from voluntarily continued patronage of the public. Colton v. Duvall, 254 Mich. 346, 237 N. W. 48, 49. "As a general rule, the expected profits of a commercial business are too uncertain, speculative and remote to permit a recovery for their loss. However, the loss of profits from destruction or interruption of an established business may be recovered for if the amount of an actual loss is rendered reasonably certain by competent proof." 17 C. J. p. 795, § 117, and authorities cited in note. It is under the principle of law announced in the last sentence of the above quotation that appellee is permitted to recover on the first five items of damages.

We have been cited to no adjudicated case in which damages resulting from loss of "good will" has been allowed, either because of a breach of contract or for the wrongful act of another, and we must therefore look to the adjudicated cases on related subjects. It must be borne in mind that neither by allegations nor proof does appellee present a case that would permit a recovery of exemplary damages. In the case of Radford Gro. Co. v. Hothan (Tex. Civ. App.) 42 S.W. (2d) 119, the sheriff levied an execution upon a stock of groceries, owned by Mrs. A. D. Hothan, to satisfy a judgment against F. R. Hothan, and sold the stock under such levy as the property of F. R. Hothan. The owner of the stock brought suit against the judgment creditor and the sheriff for damages, and as an item of damages recovered $1,600 as the value of the good will of her business. It was held that there was no basis for the item in the judgment representing the loss of good will.

A similar holding is made in Miller et al. v. Jannett et al., 63 Tex. 82. Loss of prospective profits is held to be too remote and speculative to permit their recovery in a suit of this character. Galveston, H. & S. A. Ry. Co. v. Baudat, 21 Tex. Civ. App. 236, 51 S. W. 541; Kirbs v. Provine, 78 Tex. 353, 14 S. W. 849; Kaufman v. Armstrong, 74 Tex. 65, 11 S. W. 1048. As damages for loss of good will is based entirely upon the loss of prospective profits, we feel impelled to hold, under the authorities, that appellee cannot recover such damages.

■■It is urgently insisted that there was reversible error committed by the trial court in its failure to define the expression "new and independent cause," used by the court in the definition of "proximate cause." Appellants objected to the charge defining "proximate cause," because of this failure, and under the holding of the Supreme Court the failure to define such term is error. Robertson & Mueller v. Holden (Tex. Com. App.) 1 S. W.(2d) 570; Thomas v. Goulette (Tex. Civ. App.) 12 S.W.(2d) 829; Greer v. Thaman et al. (Tex. Com. App.) 55 S.W.(2d) 519. However, in the view we take of this case, such error is harmless. Recovery is allowed only on the first five items of damages, and the evidence does not suggest that there could have been any cause other than the wrongful act of appellant in closing the highway. Vilbig & Co. v. Lucas (Tex. Civ. App.) 23 S.W. (2d) 516.

■ Error is also assigned on the admission of testimony of appellee to the effect that in a conversation with the person in charge of the work, in which appellee had undertaken to point out the damages he was suffering by reason of the closing of the highway at the railway crossing, this person told appellee, in effect, that the railway company would pay him damages. The admission of this evidence was error, because it was not shown that the person with whom appellee had the conversation had the power to bind the railroad company in respect to paying damages. Appellee's suit is, in no sense, based on this promise, and the items of damage which this court has allowed were established by uncontradicted evidence without regard to this evidence. It is undisputed that appellants wrongfully blocked the crossing; and it is likewise undisputed that appellee suffered the damages for which recovery is allowed by this court. We therefore hold that this error is harmless.

■ There was also error committed by the trial court in the admission in evidence of a conversation a witness for appellee overheard between the county judge and a county commissioner with the engineer in charge of this work. This conversation tended only to establish the fact that the commissioners' court of Grayson county had not given permission for the blocking of the highway. This fact is established by competent and undisputed evidence in the record, and the error therefore is harmless.

It follows that, in the opinion of this court, the judgment of the lower court should be reformed, so as to strike therefrom the item of $25 for the breakage of the milk bottles; the item of $200 for damage to appellee's truck; the item of $4,130 for the loss of good will; leaving the sum of $645 as the proper judgment to be rendered in favor of appellee, with interest at the rate of 6 per cent. per annum from date of the trial in the lower court.

Judgment reformed as above indicated, and as reformed affirmed.

Reformed and affirmed.