Argued February 3, affirmed April 13, 1960

# BUCK *v.* MUELLER
351 P. 2d 61

*E. R. Robnett*, Portland, argued the cause for appellant. With him on the brief were Seitz, Easley & Whipple, Portland.

*George P. Winslow* and *George P. Winslow, Jr.*, Tillamook, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL and HARRIS, Justices.

## O'CONNELL, J.

The plaintiff brings this action against the defendant lessor to recover damages for an alleged breach of a covenant in a written lease. Plaintiff is the assignee of the lessee.

The parties are before us for the second time. The first appeal, also brought by the present plaintiff-appellant, was made from an order sustaining defendant's demurrer to plaintiff's complaint. We held that the trial court erred and we remanded the cause directing the court to overrule the demurrer. *Buck v. Mueller*, 207 Or 169, 293 P2d 736 (1956).

The cause was then tried to a jury which resulted in a verdict for the plaintiff. Defendant then moved for a new trial which the lower court granted on the ground that error was committed in failing properly

to instruct the jury on the measure of damages for the alleged breach of the lease. The plaintiff appealed from the order granting a new trial.

The complaint is set out in *Buck v. Mueller*, supra. It alleges the execution of the lease, the assignment to the plaintiff, the terms of the lease and the breach of the covenant to renew the lease.

It is alleged that the plaintiff made repeated offers to renegotiate the rental for the renewal period, including the offer to submit the determination of the rental to arbitration as provided for in the lease, but that defendant refused to accept these offers. It is then alleged that on or about April 10, 1953, defendant brought suit in the circuit court for the county of Tillamook, to recover possession of the premises in question and to recover damages from the plaintiff for his alleged wrongful possession after the expiration of the initial term of the lease, and that as a result of such suit plaintiff was forced to surrender possession to the defendant on or about April 20, 1953.

Damages in the present action are claimed in the amount of $3,500 for loss of good will of plaintiff's restaurant and tavern business which he had operated on the leasehold premises, and in the further amount of $12,000 for loss of profits.

In the action brought by the present defendant on April 10, 1953, to recover possession of the premises and damages for wrongfully withholding them, the plaintiff failed to make an appearance and a default judgment was entered for the present defendant on May 12, 1953 awarding her possession and the sum of $175 per month for the use of the leasehold by plaintiff during the period he held over.

The defendant in the case at bar first contends that the plaintiff is barred by the judgment entered in

the ejectment action. It is argued that the issue in that action was the parties' right to possession and since the plaintiff's right to recover on the covenant to renew must rest upon a determination of his right to possession, the fundamental issue has already been adjudicated and constitutes a bar under the doctrine of res judicata, or more accurately, the doctrine of estoppel by judgment. That doctrine, in its applicability to a plaintiff who was a defendant in a former action, makes the judgment in that action conclusive as to all matters which he interposed or could have interposed as a defense. *Strickland v. Calancorporation, Ltd.*, 156 Cal App2d 488, 319 P2d 737 (1957) ; *Hentig v. Redden*, 46 Kan 231, 26 P. 701 (1891) ; *Pankonin v. Gorder*, 97 Neb 337, 149 NW 811 (1914) ; *Reich v. Cochran*, 151 NY 122, 45 NE 367, 46 NE 1151 (1896) ; *Hill v. Cooper*, 8 Or 254 (1880) ; Restatement, Judgments, § 41 et seq.; Developments in the Law—Res Judicata, 65 Harv L Rev 818 (1952). The doctrine applies to judgments by default. *Taylor v. Sledge*, 110 Tenn 263, 75 SW 1074 (1903) ; Annotation: Doctrine of Res Judicata as Applied to Judgments by Default, 128 ALR 472 (1940). But in the absence of a compulsory counterclaim statute, the defendant in the former action need not set up a counterclaim and his failure to do so does not preclude him from bringing a separate action against the plaintiff on the separate cause of action which was available to him as a counterclaim. Restatement, Judgments, § 58; Wright, Estoppel by Rule—The Compulsory Counterclaim Under Modern Pleading, 39 Iowa L Rev 255 (1953) ; Annotation: Prior Action in Which Claim Might Have Been Asserted by Counterclaim, Set Off, or Cross Petition, as Barring or Abating Subsequent Independent Action Thereon, 8 ALR 694 (1920). This is clearly explained in *Stillwell v.*

*Hill*, 87 Or 112, 169 P 1174 (1918) where the court said, at pp 117, 118:

> "In the former action the defendants Stillwell & Proffitt, could have set up their counterclaim for damages and had the same adjudicated therein, but they did not do so. They were not compelled to take such course or be precluded from bringing an independent action for the same. They had an election to use such cross-demand as a defense by way of recoupment or to bring a separate action upon it. The omission to take advantage of matter of counterclaim as a defense is no bar to a cross or separate action upon it, so that though the cross-claim be admissible by way of defense the defendant has an option to avail himself of it in that form or to sue upon it in another action."

■ The same facts may constitute both a ground for a defense and a ground for a counterclaim. The failure to assert such facts, either as a defense or as a counterclaim, does not preclude defendant from thereafter bringing a separate action based upon those facts. *Leslie v. Brown Bros. Incorporation*, 208 Cal 606, 283 P 936 (1929); *Reichert v. McCool*, 92 Ind App 406, 169 NE 86 (1929); Restatement, Judgments, § 58 comment b; Annotation: Judgment in Action in Which Matter was Asserted as a Defense Without Seeking Affirmative Relief as Precluding use of Such Matter as Basis of an Independent Action, Offset or Counterclaim, 83 ALR 642 (1933).

■ In the ejectment action brought against Buck he could have set up as a defense his right to possession based upon the covenant to renew. He also could have counterclaimed for damages resulting from the breach of the covenant. He elected to do neither. The failure to assert his affirmative claim in the former action does not, however, preclude him from asserting it in the

present action. *Stillwell v. Hill,* supra; cf. *Jacobs v. Jacobs,* 92 Or 255, 180 P 515 (1919). Contra: *Sobey v. Beiler,* 28 Iowa 323 (1869); But cf., *Denton v. Young,* 154 Ark 538, 242 SW 801 (1922).

We reluctantly reach the conclusion that plaintiff is not estopped by the previous judgment. We do so reluctantly because the claim now presented by plaintiff, although pleaded in terms of a breach of covenant, is essentially an assertion of a right resting upon a deprivation of possession, and that asserted right could readily have been raised by plaintiff and disposed of in the previous action. It was just such situations as this which prompted the adoption of compulsory counterclaim statutes in some states. See Wright, op. cit. supra. But we do not have such legislation and until we do the rule we have announced must be applied.

We turn to a consideration of plaintiff's only assignment of error, which asserts that the trial court erred in granting a new trial. The grounds for the order granting a new trial were that the court erred in giving some of plaintiff's requested instructions as to the measure of damages and in failing to give defendant's requested instructions on that subject.

The pertinent part of defendant's requested instructions as to general damages was as follows:

"Plaintiff, by his complaint asks $2500.00 as general damages. I now instruct you that under the pleadings and evidence of this case, even though you find that plaintiff is entitled to recover, plaintiff is not entitled to recover, as general damages, more than nominal damages. * * *"

The instructions given were as follows:

"If you find that the plaintiff is entitled to a verdict at your hands, then it will be your duty to assess plaintiff's damages. In awarding damages

for breach of a lease agreement, the aim and purpose of the law is to put the injured party in as good a position as he would have been in had the contract been performed. The injured party is allowed to recover those damages which are the direct natural and proximate result of the act of the defendant in wrongfully breaching the lease agreement. This includes all damages which flow from the breach in the natural course of events, or which may reasonably be presumed to have been within the contemplation of the parties at the time the contract was entered into.

"Plaintiff claims general damages, in the amount of $2,500, based upon defendant's refusal to submit the renegotiation of the rental to arbitration and ousting plaintiff from possession of said premises.

"You are instructed that general damages are implied in law and need not be specially pleaded or proved, although, if none are proved, only nominal damages can be awarded.

"Nominal damages means damage in name only, some small or trivial sum such as one dollar for the violation of some legal right without substantial injury."

These latter instructions on general damages were regarded by the trial judge as inaccurate for the reason that they offered no specific measure or yardstick by which the jury could arrive at the damages suffered by the plaintiff and that, therefore, the jury was allowed to reach its verdict by speculation and conjecture.

We agree with the trial judge that the instructions given were inadequate. In effect, the charge permitted the jury to find as damages an amount which could not be tested against any criteria of loss. Although in some instances the jury is permitted to arrive at its estimate of damages upon the basis of general notions of the harm produced without a specific and certain

guiding standard (e.g., in personal injury cases), this is not so in the field of contract damages. McCormick on Damages, §§ 25, 28. The standard measure of damages for the loss or deprivation of a leasehold interest is the difference between the reasonable rental value of the premises and the reserved rent.

■ In the instant case the covenant giving the lessor the right to renew the lease provided that the rental for the additional period was to be "renegotiated according to the going rent and existing conditions at that time," and that if the parties were unable to agree upon a rental for the additional term, the matter would then be submitted to a board of arbitration for final determination.

The foregoing provisions contemplated that a reasonable rental would be fixed. Such a rental would be arrived at by determining the amount for which the premises would rent. The rental value is determined by the same method. *Gans v. L. Olchin & Co., Inc.*, 109 Conn 164, 145 A 751, 63 ALR 428 (1929); *Bowers v. Sells*, 125 Ind App 324, 123 NE2d 194, 125 NE2d 175 (1954); *Bookstein v. Dragunaitis*, 239 Mich 65, 214 NW 219 (1927); *Herpolsheimer v. Christopher*, 76 Neb 352, 107 NW 382, 111 NW 359 (1907); *Slater Realty Corp. v. Meys*, 137 NJL 263, 59 A2d 650 (1948); *Salzgeber v. Mickel*, 37 Or 216, 60 P 1009 (1900). Therefore, there being no difference between the rental value and the rental agreed upon, the plaintiff can show no substantial general damages. *Spiriti v. Colacicco*, 48 Lack Jur 13 (Pa 1946). He is, of course, entitled to nominal damages for the invasion of his possessory right if such is shown. *Higgins v. Dail*, 61 A2d 38 (Munc. Ct. of App., Dist of Col 1948); *Blackwell v. Fannaly*, 4 So2d 33 (La App 1941); *Schienle v. Eckels*, 227 Pa 305, 76 A 15 (1910). The trial court's instructions per-

mitted a recovery of substantial damages. This was error and the trial judge properly granted the motion for a new trial on the basis of this error.

Plaintiff argues that defendant's requested instructions relating to general damages are erroneous in that they were predicated upon the theory that plaintiff is seeking recovery for an unlawful eviction, when in fact the remedy sought is for breach of contract. Under the facts of this case the suggested distinction is of no consequence. Whether viewed as a breach of contract or as a tort, plaintiff's loss arises from the deprivation of possession and the consequences which flowed from it. As we have explained, no general damage resulted. The special damages flowing from defendant's conduct would also be measured exactly the same whether that conduct is viewed as a tort or a breach of contract—the damage is the loss of profits and any other losses incident to the dispossession of plaintiff. Denominating defendant's conduct as a breach of contract does not give the plaintiff a license to demand damages not subject to measurement.

■ Although there are no general damages in the instant case, plaintiff is entitled to recover special damages for the invasion of his interest in the leasehold, if he can prove such damages. He may show that as a result of a deprivation of possession he suffered a loss of business profits. *Landon v. Hill*, 136 Cal App 560, 29 P2d 281 (1934); *Richker v. Georgandis*, 323 SW2d 90 (Tex Civ App 1959); *Risdon v. Hotel Savoy Co.*, 99 Wash 616, 170 P 146 (1918); 2 McAdam on Landlord and Tenant (5th ed), § 344; 3 Sutherland on Damages (4th ed), §§ 867-870. Cf., *Willer v. Oregon Railway & Navigation Co.*, 15 Or 153, 158, 13 P 768 (1887); *Stubblefield v. Montgomery Ward & Co.*, 163 Or 432, 96 P2d 774, 98 P2d 14, 125 ALR 1228 (1940).

In the present case the defendant requested, and the court gave the following instruction on special damages for loss of profits:

"Plaintiff, by his complaint, asks for special damages in the sum of $12,000.00 for loss of profits, which plaintiff alleges he would have received if permitted to conduct a restaurant business under the terms of the contract.

"Before plaintiff can recover for loss of profits, plaintiff must prove, by preponderance of the evidence, that he would have made a profit. Profit means the amount remaining from all receipts of a business after deducting all expenses. Expenses include the reasonable value for all necessary labor and depreciation. The reasonable value of necessary labor, even though performed by plaintiff and his wife, should be considered as a part of the expenses for the purpose of determining whether or not plaintiff would have made a profit had plaintiff remained in possession of the property for an additional three year period."

The instruction, as far as it went, was correct. The instruction should have included other elements of importance in defining the right to recover for loss of profits. Plaintiff's proof of loss must meet the test of "reasonable certainty," i.e., "the *claim* must be such that from its statement there seems no reason that rational proof could not be furnished, that the damage claimed did result from the wrong, and the *actual evidence* must be such that reasonable men, acting upon inference and not from guess, can find therefrom that damage did thus result, and can derive therefrom substantial data for fixing the amount." McCormick on Damages, p. 100. This is a way of saying that the loss of profits must not be uncertain and speculative. *Stubblefield v. Montgomery Ward & Co.*, supra; *Mc-Ginnis v. Studebaker*, 75 Or 519, 146 P 825, 147 P 525

(1915); 5 Williston on Contracts (Rev ed) § 1345. On the other hand, "It is not a sufficient reason for disallowing damages claimed that they cannot be exactly calculated. It is sufficient if, from proximate estimates of witnesses, a satisfactory conclusion can be reached * * *." *Brown v. McCloud*, 96 Or 549, 552, 190 P 578 (1920). *Allison v. Chandler*, 11 Mich 542 (1863). Past profits may be shown if they reflect the operation of an established business. *Landon v. Hill*, supra; *Young v. Cobbs*, 83 S2d 417 (Fla 1955); *Walgreen Co. v. Walton*, 16 Tenn App 213, 64 SW2d 44 (1933); *Richker v. Georgandis*, supra. See: McCormick, The Recovery of Damages for Loss of Expected Profits, 7 N C L Rev 235, 244 (1929); Note, 17 Minn L Rev 194 (1933). If the business has not operated long enough to establish a reliable record of profits, the jury will not be permitted to speculate upon the probable success of the particular business alleged to have been harmed. *Ellerson v. Grove*, 44 F2d 493 (4th Cir 1930); *Guttinger v. Calaveras Cement Co.*, 105 Cal App2d 382, 233 P2d 914 (1951); *Evergreen Amusement Corporation v. Milstead*, 206 Md 610, 112 A2d 901 (1955). See: Note, 64 Harv L Rev 317 (1950).

■ In the case at bar the plaintiff operated the restaurant business for a period of approximately two years. Plaintiff testified that his net profit during that period averaged $287 per month. His ledger shows gross receipts for 1951 of $17,069.92, and expenditures of $14,490.19. We do not have the comparable figures for 1952. His income tax return for 1951 reported a net profit of $1,046, and his 1952 return indicated a net profit of $1,575. Deductions were taken in the tax returns for depreciation and apparently some other expenses which were not reflected in the net profit figure taken from the ledger. Food eaten by plaintiff

and his wife was not considered in arriving at the totals. And the list of expenditures of $14,490.19 did not include any wages paid to plaintiff and his wife, both of whom worked regularly at the restaurant. Upon cross-examination plaintiff estimated the value of his own services at $200 per month and his wife's services at $140 per month.

In computing the cost of operating the business, plaintiff must include the value of his own services and those of his wife. A case stating this principle is *Morena v. Mercer*, 92 Cal App2d 824, 208 P2d 50 (1949). There, plaintiff lessee and his wife operated a cafe upon the leasehold from which plaintiff was wrongfully evicted. Plaintiff brought an action for damages resulting from the eviction and among other items, he claimed damages of $1,855.14 for loss of profits. The court found that the reasonable value of the services of plaintiff and his wife and the reasonable value of meals withdrawn by them was $1,362.20. The court deducted this amount from the sum of $1,775.14 in computing the loss of profits. The same principle is applied in *Landon v. Hill*, supra. See: *Wells v. B. E. Porter Estate*, 205 Cal 776, 272 P 1039 (1929); *Elliott v. Bulk Service Stations, Inc.*, 323 Ill App 71, 54 NE2d 772 (1944); *Columbus Mining Co. v. Ross*, 218 Ky 98, 290 SW 1052, 50 ALR 1394 (1927); *Atkinson v. Morse*, 63 Mich 276, 29 NW 711 (1886); *Rupert v. Swindle*, 212 SW 671 (Tex Civ App 1919); *Bogart v. Pitchless Lumber Co.*, 72 Wash 417, 130 P 490 (1913).

If the value of the services of plaintiff and his wife are deducted from the figures relied upon as the net profits for the two years of plaintiff's operation of the business, the result is a loss and not a profit. If, upon a new trial, the plaintiff can show no better record than he does by the evidence he produced in this case, he is

not entitled to get to the jury on the question of damages for loss of profits. Such a record does not show an "established" business which is a requirement of proof where plaintiff proposes to project his loss into the future on the basis of the business experience of the past. *Natural Soda Products Co. v. City of Los Angeles*, 23 Cal2d 193, 143 P2d 12 (1943). See: McCormick on Damages, p 107.

The court also instructed the jury to assess damages for the loss of good will. Business good will has been variously defined. Note: An Inquiry into the Nature of Goodwill, 53 Colum L Rev 660 (1953). In general, it may be described as the increment over and above the physical assets of the business. As applied to a restaurant business it may be considered as that increment which is attributable to various factors pointing to the reasonable expectation of continued profitable operation, such as the business location, reputation for good food and service, general atmosphere and other qualities which make the establishment attractive to those seeking that type of service and for that reason gives promise of continued patronage. *Collas v. Brown*, 211 Ala 443, 100 So 769 (1924); *Murray v. Bateman*, 315 Mass 113, 51 NE2d 954 (1943); *Levene et ux v. City of Salem*, 191 Or 182, 229 P2d 255 (1951); *Texas & P. Ry. Co. v. Mercer*, 58 SW2d 896 (Tex Civ App 1933).

Before it would be proper to submit the question of damage for the loss of good will, it would be necessary to produce evidence that the business had the qualities which are the ingredients of good will. The record in the instant case does not contain substantial evidence of these elements characterizing good will. Upon a new trial, if nothing additional is shown, it would not

be proper to submit to the jury this element of claimed damage.

 Plaintiff claimed damages for loss incurred in disposing of certain equipment. If the loss resulted from the premature termination of the lessee's interest in the premises, he is entitled to recover such damages. See: *Morena v. Mercer*, supra; *Wilkinson v. Stanley*, 43 SW 606 (Tex Civ App 1897). The plaintiff is not entitled to recover damages for the cost of moving from the leasehold except to the extent that the cost incurred in moving at the time of his eviction is greater than it would be at the end of the additional term. *Knapp v. Guerin*, 144 La 754, 81 So 302 (1919); *Pierce v. Hedden*, 105 La 294, 29 So 734 (1901); *Eddy v. Coffin*, 149 Mass 463, 14 Am St. Rep 441, 21 NE 870 (1889); *Chatterton v. Fox*, 5 Duer 64 (NY Sup Ct 1855). Cf., *Besinger v. McLoughlin*, 257 Wis 56, 42 NW2d 358 (1950). Contra: *McElvaney v. Smith*, 76 Ark 468, 88 SW 981 (1905); *Johnson v. Snyder*, 99 Cal App2d 86, 221 P2d 164 (1950); *McKennon v. Anderson*, 49 Wash 2d 55, 298 P2d 492 (1956); *Joe Chung v. Louie Fong Co.*, 130 Wash 154, 226 P 726 (1924); *Wade v. Herndl*, 127 Wis 544, 107 NW 4, 5 LRA (NS) 855 (1906).

 The jury was instructed that in assessing damages for loss of profits, if any, it should not deduct the income earned by plaintiff in other employment after he left the leasehold premises. In his ruling on the motion for a new trial the trial judge recognized the error of this instruction.

 Plaintiff's claim of $12,000 special damages for loss of profits was based upon an alleged profit of $285 per month which was computed without any deduction for the value of plaintiff's services. Plaintiff testified that the reasonable value of his services was $200 to

$300 a month. Thus it is seen that the loss of earnings as an element of damages distinct from loss of profits is not specially pleaded. It has been held that loss of earnings is not "a consequence of deprivation of peaceful possession of real property to be anticipated in the usual course of things, and should therefore be pleaded by way of special damage." *Tooke v. Allen*, 85 Cal App2d 230, 192 P2d 804, 809 (1948).

However, for the purpose of disposing of plaintiff's contention we shall assume that the plaintiff's prayer for relief embraces not only a demand for damages for loss of profits to the business, but also for a loss of his earnings as operator of the restaurant and tavern. Cf., McCormick on Damages, p 311. So considered, however, that which plaintiff would receive as earnings would come to him only if he personally devoted his services to the business. He could not have made such earnings if, instead of performing the services himself he employed and paid someone else to do so. Plaintiff contends that he is not obligated to mitigate damages by seeking other employment and that, furthermore, any earnings which he received after his loss of the leasehold premises need not be set off against the earnings he would have received had he continued under the lease. Plaintiff relies upon the rule that where the contract is not one which must be personally performed by the promisee he need not make any effort to mitigate damages and he need not set off the earnings actually made. 15 ALR 752. But this rule, if it is to make sense, must be based upon the assumption that the promisee could make the earnings alleged and at the same time devote his time to another profitable enterprise and thus increase his income. Under the facts of the present case it is clear that the compensation for personal services in the

restaurant business would not have accrued to plaintiff if he had devoted his time to some other occupation. Since this part of the claim is for loss of earnings we think that the rule which, by analogy, more closely fits the fact situation before us is that stated in the annotation in 141 ALR 670 with respect to employment contracts:

> "* * * [T]he rule appears to be that while the employee is not obliged to seek or accept work of a different nature, he may be required to account for sums actually earned even in some other kind of work, to the extent at least that the subsequent earnings are not produced by additional labor and effort over what he would have been required to render under the original contract."

In our opinion, therefore, it would be proper for the trial court to instruct the jury that plaintiff's earnings in the instant case must be deducted from his prospective earnings, if any, in conducting the business.

There being grounds for granting a new trial the judgment of the lower court is affirmed.

Judgment affirmed.

PERRY, J., specially concurring.

I concur in the majority opinion, that the trial court did not err in granting a new trial because of its instructions upon general damages.

I cannot, however, agree with the majority opinion as to the law of the case as to special damages.

What the majority means by stating that "Such a record does not show an 'established' business which is a requirement of proof where plaintiff proposes to project his loss into the future on the basis of the business experience of the past," as used in context seems most confusing. If the majority intend to convey the

thought that in this case there is no record of the business having ever made a profit and there being nothing further shown, therefore the plaintiff cannot recover because of his failure of proof of any profits, I am in complete accord. If, on the other hand, they intend to convey the thought that the business has not operated a sufficient length of time, such as a new venture, so as to be considered an "established" business and for this reason the question of profits is highly speculative, then I disagree.

The matter of an established business as opposed to a new venture is clearly set forth in McCormick on Damages, § 29, p 107, and in *Natural Soda Prod. Co. v. City of L.A.*, 23 Cal2d 193, 143 P2d 12. In this latter case, cited by the majority, the court stated, 23 Cal2d 193, 199, 143 P2d 12, 17:

"In addition to other items, plaintiff was awarded damages for loss of profits, which defendant contends was not proved with certainty. The award of damages for loss of profits depends upon whether there is a satisfactory basis for estimating what the probable earnings would have been had there been no tort. If no such basis exists, as in cases where the establishment of a business is prevented, it may be necessary to deny such recovery. California P. Mfg. Co., Inc., v. Stafford Packing Co., 192 Cal. 479, 485, 221 P. 345, 32 A. L. R. 114; Gibson v. Hercules Mfg. Co., Inc., 80 Cal. App. 689, 252 P. 780. If, however, there has been operating experience sufficient to permit a reasonable estimate of probable income and expense, damages for loss of prospective profits are awarded. Sobelman v. Maier, 203 Cal. 1, 9, 262 P. 1087; Pacific, etc., Co. v. Alaska Packers Ass'n., 138 Cal. 632, 72 P. 161; Landon v. Hill, 136 Cal. App. 560, 29 P2d 281; Pye v. Eagle Lake Lumber Co., 66 Cal App. 584, 227 P. 193; Hacker Pipe & S. Co. v. Chapman V. Mfg. Co., 17 Cal. App2d 265, 61 P.2d 944."

This matter is also discussed and the same conclusions drawn in *Evergreen Amusement Corporation v. Milstead*, 206 Md 610, 112 A2d 901, cited in the majority opinion.

I agree that plaintiff's loss of what may be considered earnings as distinguished from future profits is an item of damage to be recovered in an action for breach of an agreement to lease, but I do not believe the law requires any mitigation thereof when employment is found elsewhere.

In my opinion, the facts of this case bring it within the rule set out in McCormick on Damages where at page 148, § 41, the situation we have here is defined as follows:

"* * * If the contract is one that does not require B's personal service in the actual performance of it, but permits B to employ others to do the work, then obviously no credit can be claimed by A, when he repudiates the contract for earnings thereafter made by B from other sources. B could have made these earnings even if A had not freed him by repudiation from the obligation to carry out the contract with A."

Also see 15 Am Jur 428, Damages § 31.

In 15 ALR 752, Anno. Damages II, it is stated:

"The weight of authority is to the effect that the rule requiring one to use reasonable effort to obtain other employment in order to minimize damages from breach of a contract does not apply where the contract does not require the use of some special instrumentality, and is not one which must be performed by the party personally, but may be carried out by his subordinates, and which does not, therefore, preclude his entering upon the performance of other similar contracts concurrently with the first, and obtaining a profit from all of such con-

tracts as he may be able to secure and perform at the same time."

81 ALR 284, Anno. Duty to Mitigate Damages, also sets out this rule:

"* * * on the breach of a contract for personal services or for the use of some special instrumentality, the party wronged will use reasonable effort to obtain other employment, in order to minimize damages; and the amount which he earns in this manner, or which he might have earned had he acted reasonably, will be excluded in the assessment of damages for the wrongful discharge. But this rule is inapplicable to contracts for the performance of some specified undertaking, not necessarily to be performed by the party personally."

*Mt. Pleasant Stable Co. v. Steinberg*, 238 Mass 567, 131 NE 295, 15 ALR 749, sets out the principle applicable in the instant case. In that case plaintiff contracted to furnish defendant with teams of horses to be used in defendant's trucking business. D broke the contract. Damages were claimed but defendant contended plaintiff had a duty to make all reasonable efforts to secure another contract in mitigation of damages. It was held the rule in personal service contracts that a party upon breach of the contract by the other party is required to use other employment and use wages earned therefrom to mitigate damages does not apply. This case cited the leading case of *Wolf v. Studebaker*, 65 Pa 459, 462 (1870), wherein by verbal contract defendant leased to plaintiff the use of her farm for one year. The contract was breached when defendant refused to allow plaintiff on the premises. Plaintiff became employed elsewhere and defendant sought to mitigate plaintiff's damages to the extent of plaintiff's earnings. The court said:

"* * * There are undoubtedly cases in which

such facts do mitigate damages. Such commonly occur in cases of the employment of clerks, agents, laborers or domestic servants for a year or a shorter determinate period. But I have found no case where a disappointed party to a contract for a specific thing or work, who, taking the risk from necessity, of a different business from that which his contract if complied with would have furnished, and shifting for himself and family for employment and for them and his teams, is to be regarded as doing it for the benefit of a faithless contractor. * * *

* * * * *

"* * * I would say that where a disappointed contractor for the performance of a specified thing finds something of a different nature from his contract to do, his doing it ought not to mitigate damages. * * *"

The factor that distinguishes the case before us from one which the party is being paid a wage for his work under a contract for personal services is plaintiff's right to conduct the operation of this restaurant in any way he saw fit, which would include the right to use his own labor, or employ others to conduct the operation. I think it becomes apparent from a reading of the contract of lease that this was not a contract for personal services and therefore not within the rule allowing mitigation.