### TERMINAL RESTAURANT, Inc. v. BINKOW, et ux.

No. 61-L-5032.

Circuit Court, Dade County.

June 20, 1962.

William W. Charles, Miami, for plaintiff.

Milton A. Friedman, Miami, for defendants.

PHILLIP GOLDMAN, Circuit Judge.

On January 17, 1962, the parties to this cause by written agreement waived jury trial and submitted this cause on the testimony, evidence and pleadings theretofore filed in the cause, subject to oral argument. The court after consideration of the testimony, evidence, pleadings, oral arguments and briefs of the parties finds, concludes and orders as hereinafter set forth.

### Findings

On January 13, 1958, plaintiff, Terminal Restaurant, Inc., leased from defendants, Charles E. Binkow and Ruth L. Binkow, restaurant premises for a term of four years beginning January 1, 1958 and ending December 31, 1962. Rent became due on the first of each month; and the written lease provided that the lessors might at their option re-enter should the rent remain "due and unpaid for a space of five (5) days after same shall become due . . ."

Terminal deposited $2,000 with the Binkows as security in the event of premature termination of the lease "because of any act of default on the part of the Lessee . . ." The written lease also contained the following provision — "3. That said Lessee may not assign Lessee's interest in this lease . . . without first having obtained the written consent to such assignment from the Lessors . . ."

On November 16, 1960, Terminal assigned the lease, including security deposit, to Realty Corp. of Miami. The Binkows consented in writing and recognized Realty "as the Assignee of said lease and the successor subscriber to the leasehold interest . . ." of Terminal "as Lessee therein." The parties did not execute a new lease, and no additional consideration flowed to the Binkows. The written consent provided that " . . . In the event of any subsequent assignment, same will not be recognized unless specified

consent is obtained from and granted by Lessors." The Binkows did not by means of this consent or otherwise release Terminal from its obligation under the contract to pay rent.

Realty took possession under the lease, but financial troubles plagued it almost from the start. By March 1, 1961, Realty's affairs had reached such a state that it could not meet the March 1 rental installment. Terminal learned of Realty's failure and tendered the March installment by check on March 6, 1961, the fifth day after the due date of March 1. The Binkows neither accepted nor refused the tender at that time. On March 13, 1961, Realty reassigned the lease to Terminal and gave Terminal a bill of sale for the restaurant fixtures in exchange for a general release.

On March 14, 1961, Terminal entered the premises. This provoked a dispute with the Binkows at the premises as a result of which plaintiff left. The Binkows then changed the locks on the doors but later permitted plaintiff to remove the restaurant equipment from the premises. The Binkows never returned the security deposit.

### Conclusions

Essentially the Binkows contend the same as the lessors contended in Coulos v. Desimone, 34 Wash. 2d 87, 208 P.2d 105. In Coulos the lessors' contention that no relationship of landlord and tenant existed between the parties at the time of the eviction was " . . . based upon the provision in the lease, reiterated in the assignment to Hoffman, that the lease should not be assigned without the written consent of the lessor . . ." The court in Coulos disposed of this contention, stating (208 P.2d at 109-110) —

"It is true that the parties to an original lease may lawfully covenant that no assignment of the lease or any part thereof should be valid without the written consent of the lessor, and an assignment in violation of such covenant will confer no rights on the assignee . . . However, such covenants, being restraints upon alienation by the lessee, are not favored in the law and are strictly construed . . . It has been held that such a covenant is not broken where the assignment, executed without the lessor's consent, is made by an assignee back to the original lessee. The reason therefor is stated in McCormick v. Stowell, 138 Mass. 431, as follows —

" 'The covenant by the lessee, that he or others having his estate in the premises will not assign this lease without the written consent of the lessor, does not by its true construction extend so far as to prohibit a reassignment to the

lessee himself without a new and special consent of the lessor. *By the lease itself, the lessor consents to take the lessee as his tenant for the full term mentioned in the lease . . .* ' "

On the authority of Coulos, the plaintiff was therefore neither obliged by the provisions of the written lease nor the November 17 written consent to obtain any special written consent from the Binkows in order to reacquire the leasehold interest.

The case of C.N.H.F., Inc. v. Eagle Crest Development Co., 99 Fla. 1238, 128 So. 844, does not undermine this conclusion as defendants contend. That case does hold that an assignment destroys the privity of *estate* between assignor and lessor. But the case in no way affects the universal rule that a lease assignment does not destroy that privity of *contract* between lessor and assignor which among other things preserves the lessor's right to rent against the assignor after the assignment. See, for example, 52 C.J.S. "Landlord and Tenant", Section 528; Abrahamson v. Brett, 143 Ore. 14, 21 P.2d 229.

The Binkows constructively evicted plaintiff by denying its title, refusing to accept the rent and locking plaintiff out. Coulos v. Desimone, supra; Young v. Cobbs, 83 So.2d 417 and 110 So.2d 651.

For all the above reasons, plaintiff may recover its $2,000 deposit with interest from March 14, 1961, to the date hereof. Young v. Cobbs, supra. But plaintiff may not recover for the alleged difference between the value of its restaurant fixtures in place at the restaurant and their value outside the restaurant. An evicted tenant may recover for depreciation in value of property resulting from "premature termination of the lessee's interest in the premises." Buck v. Mueller, 207 Ore. 169, 292 P.2d 736, 351 P.2d 61, 68. But the alleged diminution in value here bore no relationship to the *premature* termination of the lease. For all that appears, taking the equipment out of the building at the end of the term would have affected the value in the same manner and to the same extent as taking it out before the end of the term. *Plaintiff offered no other proof of damage.*

It is accordingly ordered and adjudged as follows — (1) The defendants shall pay to the plaintiff the sum of $2,090, for which amount final judgment is hereby entered against the defendants and in favor of the plaintiff, and for which sum let execution issue. (2) Costs to be taxed against the defendants.